# IN RE DISBARMENT OF GEORGE H. OTTERNESS.[1]

September 26, 1930.

No. 27,620.

[1]Reported in 232 N. W. 318.

*John A. Burns, Frank E. Putnam* and *Alexander Seifert,* for state board of law examiners.

*Fosnes & Rolloff,* for respondent.

PER CURIAM.

Proceeding on complaint of the state board of law examiners for the discipline of George H. Otterness, an attorney at law, hereinafter referred to as the defendant.

One charge against the defendant is that he made a contract with one Charles A. Oberg, an attorney at law of this state, for the transfer or turning over of defendant's law practice at Willmar, Minnesota, to Oberg. The referee found that it was in effect agreed between them that defendant should transfer to Oberg all his law business, with certain specified exceptions, and should not thereafter practice law at Willmar, and that defendant violated this contract by continuing to practice law there.

There was no written contract between the parties, and what their agreement was must be gathered from conflicting oral testimony and from written correspondence between them. The evidence on this charge is not so clear or convincing or of such a character that we feel justified in basing thereon any conviction of serious misconduct. State Board of Law Examiners v. Dodge, 93 Minn. 160, 100 N. W. 684; In re Hertz, 139 Minn. 504, 166 N. W. 397. What civil liability, if any, there may be, we are not here to determine.

The serious accusation here presented has reference to the relation between defendant and the Kandiyohi County Bank, a bank-

ing corporation organized under the laws of this state and doing business at Willmar. This accusation is divided into three separate charges in the complaint, which will be here considered together.

On March 1, 1920, defendant became cashier of the bank. He was employed at a salary of $3,000 per annum. In addition thereto he was permitted to receive and retain any attorney's fees earned by him from other parties during the time of his employment. On or about June 1, 1921, a change in the employment was made and a new agreement entered into. He was then made vice president of the bank at a salary of $4,000 per year; and, as part of his contract of employment, it was agreed that all attorney's fees earned by him thereafter during such employment should when collected be turned over to the bank as income of the bank and become its property. It was also agreed that a contingent or revolving fund of $600 should be set aside by the bank for defendant's use in paying officers' fees and expenses advanced by him for the clients in the law practice, to be returned to the bank and credited to this fund when repaid by the clients. Defendant served under this employment until April 1, 1929. During that period the bank received as income from the law practice so carried on by defendant sums varying from $1,662.60 to $4,366.34 per year, and aggregating $24,651.15 for the entire period. During that time defendant foreclosed, as attorney, ten mortgages, five of them for the bank and five for other parties. In these foreclosure proceedings defendant charged and taxed as disbursements therein the attorney's fees provided in each mortgage, making the regular affidavit that such fees had been earned by him as attorney in each case; and these fees were collected by him and paid over to the bank where the foreclosures were for other parties, and credited to the bank on foreclosures of its own mortgages as receipts from legal services. Defendant also conducted probate proceedings in some 12 estates, and charged, and he or the bank collected, attorney's fees for his services as attorney in such matters, and such fees were paid over to the bank. Other legal services by defendant were handled in the

same way so that the bank received all income from defendant's practice of law. Defendant was furnished a separate office room in the bank adjoining its banking room.

The referee found that by means of defendant's contract of employment and by his practice of law in the manner stated the bank in fact and in effect carried on the general practice of law. It may be noted that defendant did not during the time in question conduct litigation in the district courts.

The referee further found that in his practice of law the defendant used stationery of the bank and rendered advice and legal opinions in writing upon such stationery, signing his name thereto over his title as an officer of the bank. These findings are sustained by the evidence and are not seriously challenged.

■ There can be no objection to the hiring of an attorney on an annual salary basis by banks, other corporations, firms or individuals, to attend to and conduct its or their legal business. An attorney so employed may, as attorney for his employer, foreclose mortgages owned by such employer and may include the proper attorney's fees therefor in the foreclosure charges, so long as such fees are covered by and paid to him out of his salary and do not exceed what is actually paid to him or result in any profit to the employer. See Swift v. Commrs. of Hennepin County, 76 Minn. 194, 78 N. W. 1107. But neither a corporation nor a layman not admitted to practice can practice law nor indirectly practice law by hiring a licensed attorney to practice law for others for the benefit or profit of such hirer. For this bank to employ defendant to conduct law business generally for others for the benefit and profit of the bank amounted to the unlawful practice of law by the bank and was misconduct both on the part of the bank and this defendant, who was a participant therein.

■ The foreclosure of mortgages by advertisement, where an attorney's fee is charged as part of the foreclosure expense and included in the costs, is practice of law. The statutory provisions as to attorney's fees in such proceedings, G. S. 1923 (2 Mason, 1927) §§ 9606, 9620, 9646, 9647, clearly indicate that no attorney's fees

can be charged or included in the costs unless an attorney at law is employed to conduct the foreclosure.

◼ The probate courts of this state are courts of record with exclusive original jurisdiction over the estates of deceased persons and persons under guardianship. Conducting proceedings in those courts constitutes practice of law. The probate courts have properly provided, by rule 5 of the probate court rules [175 Minn. lxxvii] that no person not duly admitted to practice law shall appear as attorney or counsel in any action or proceeding in those courts except in his own behalf when a party thereto, and that only a person beneficially interested as an heir, devisee, legatee, or as a creditor in relation to his own claim shall be considered such a party. An executor, administrator, or guardian as such has no right to conduct probate proceedings except in matters where his personal rights as representative are concerned, as for instance where his account as representative is in question, or misconduct is charged against him as representative.

A more comprehensive definition of the practice of law is not called for in this case and should not here be undertaken.

◼ The defendant has practiced law in this state since 1894. He is a man of good reputation as a citizen and attorney. No complaint is made of any misconduct towards his clients. He is no longer employed by the bank, and the bank has been merged with and taken over by another bank. Under the circumstances a judgment of disbarment or suspension is not deemed necessary. The defendant should be and is severely censured by this court for participating in the practice of law by a banking corporation as herein set forth.

One other charge against defendant, that of representing conflicting interests in a probate proceeding, was not considered by the referee and is not now presented.

The penalty imposed in this, the first case of this character here, is not to be taken as the measure of the penalty that may be imposed should future similar cases arise after counsel have had the benefit of the views here expressed.

Stone, J. took no part.