ELWOOD FITCHETTE AND ANOTHER v. ARTHUR C. TAYLOR AND OTHERS.[1]

May 18, 1934.

No. 29,958.

[1]Reported in 254 N. W. 910.

*Mason W. Spicer*, for appellant.

*W. W. Gibson, Stanley B. Houck*, and *Walter S. Lundeen*, for respondents.

*STONE, Justice.*

Appeal by defendant Arthur C. Taylor from a judgment enjoining him from:

"(a)    Furnishing opinion as to the right to maintain an action against others.

"(b)    Drawing contracts, releases and affidavits for others.

"(c)    Furnishing legal services or advice to others.

"(d)    Soliciting, settling or adjusting personal injury claims or otherwise engaging in the practice of law."

The case was tried by the court on a stipulated statement of facts. Plaintiffs, Elwood Fitchette and Thomas Vennum, are president and secretary, respectively, of the Hennepin County Bar Association. They bring the action for themselves, the members of the Hennepin County Bar Association, and all other attorneys at law, the public, and the courts of Hennepin county. Defendant Taylor and his associates, none of them members of the bar, doing business as the Minnesota Adjusting Association, "solicited, advertised for, and held themselves out, as being engaged in the business of adjusting and settling claims for personal injuries and collecting the claimed damages therefor" for a consideration, usually a contingent fee of 33 1/3 per cent. They "proffered their services to injured persons who were claimants for prospective damages on account of personal injuries." Upon employment, they "defined the legal rights of said injured persons and the legality of the said alleged claims" and gave them legal advice and counsel "both with reference to the question of liability against prospective defendants and the amount of damages." They "interviewed witnesses and secured statements relative to the claims which they purported to handle, in order to enable them to give said claimants legal advice and opinion as to

the collectibility thereof and in order to enable said defendants to discuss, advocate and argue said legal rights and liabilities in the course of presenting said claims and negotiating the settlement thereof." For their employers, they negotiated with insurance companies and others for settlement.

■ The facts make a case of the practice of law by a layman, which is in any view unlawful. The conduct of litigation is by no means all of legal practice. A lawsuit is but one process of settling an issue of legal right and wrong. Many are disposed of without suit. But the disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights and conduct in respect thereto are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the special field of medicine. There is no occasion to attempt definition of the practice of law. In re Disbarment of Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319. It is enough that, under any permissible definition, the subject of this injunction was the practice of law by a layman and so unlawful. People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; People v. Alfani, 227 N. Y. 334, 125 N. E. 671. If compensation is exacted, "all advice to clients and all action taken for them in matters connected with the law" are practicing law. In re Duncan, 83 S. C. 186, 189, 65 S. E. 210, 24 L.R.A.(N.S.) 750, 18 Ann. Cas. 657.

■ So far there is no real debate. The question stressed for defendant Taylor is whether by his unlawful conduct he made himself a proper target for an injunction. Ordinarily, injunction does not lie merely to prevent commission of crime. But the criminality of an act or series of them does not bar injunctive relief if otherwise there is ground for it. 32 C. J. 277.

■ It is established that the admission to practice of attorneys and their disbarment is a part of the judicial power allocated to the courts by the departmentalization of our government. In re Disbarment of Greathouse, 189 Minn. 51, 248 N. W. 735; In re

Day, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519. Having the power through disciplinary proceedings to protect the public by preventing attorneys from indulging in the unlawful practice of law (In re Disbarment of Greathouse, 189 Minn. 51, 248 N. W. 735), it would be anomalous if we had no similar power to protect the public from the illegal practice of law by laymen. The latter has been held contempt of court. In re Morse, 98 Vt. 85, 126 A. 550, 36 A. L. R. 527. The power to punish by contempt was there considered as a necessary corollary of the judicial function to license attorneys. The same view was entertained in People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901.

It is not a single act that is complained of. It is a series of doings amounting to a well settled custom which defendant would continue if he were not enjoined. That such a course of conduct would be unlawful is obvious. While the traditional office of an injunction is the protection of property or rights of property, there is a noticeable absence of judicial attempt so to enumerate the subjects of the remedy or delimit its field as to hamper the power of equity to grant injunctional relief where obviously it is needed in the interest of justice. The thought of the courts has been "that it is impossible to foresee all the exigencies of society which may require their aid and assistance to protect rights or redress wrongs. * * * interposition by restraining order is a matter of growth, and keeps pace with advancing civilization" so that the courts are continually and properly finding new subjects for injunctional relief. 14 R. C. L. 365.

But in this case we do not perceive that we are in a new or strange field of injunctional relief. Attorneys as officers of court exercise a privilege peculiar to themselves and not enjoyed by those outside of the profession. Hence it is in a very real sense a franchise and property right. Dworken v. Apartment House Owners Assn. 38 Ohio App. 265, 176 N. E. 577; Unger v. Landlords' Management Corp. 114 N. J. Eq. 68, 168 A. 229; Paul v. Stanley, 168 Wash. 371, 12 P. (2d) 401. That is enough to show that these plaintiffs, suing not for themselves alone but for the benefit of all the affected members of their profession, are entitled to injunction to prevent the

unlawful intrusion of defendant Taylor into their office and professional field. In such a case the extent of the damage to the property right is unimportant. The existence or threat of real damage is enough to warrant relief.

Judgment affirmed.