## MONTGOMERY v. UTILITIES INS. CO.

### No. 3236.

Court of Civil Appeals of Texas. Beaumont.

May 26, 1938.

Rehearing Denied June 1, 1938.

J. T. Lindsey, of Port Arthur, and C. A. Lord, of Beaumont, for appellant.

John G. Tucker and Orgain, Carroll ,& Bell, all of Beaumont, for appellee.·

COMBS; Justice.

We will refer to the appellant as plaintiff, the position he occupied in the court below, and to appellee, which was defendant in the lower court, as the Insurance Company.

In 1933 the Insurance Company issued its policy of indemnity insurance to the County Judge of Jefferson County, Texas, insuring the assured, or his legal representatives, against direct loss by reason of the ownership, maintenance or specified use of certain automobiles enumerated in the policy. Numerous risks were excluded, including the following:

"B. This Policy does not cover: * * (3) accidents to any employee or employees of the Assured while engaged in the operation, maintenance or repair of said automobile or automobiles or while engaged in the usual course of the Assured's trade, business or profession; nor loss resulting or arising from any of the following causes or while any automobile covered herein is being used or maintained under any of the following conditions: * * * (b) accidents to passengers, while any commercial type automobile described in the Declarations as used to transport materials or merchandise, is used for passenger carrying purposes"

The policy also contained the provision:

"VI. The company will investigate all accidents and claims covered hereunder and defend in the name and on behalf of the Insured all suits thereon, even if groundless, of which notice is given to it as hereinafter required", etc.

On January 12, 1934, plaintiff, Montgomery, an employee of Jefferson County, was being transported to work along with other employees in a county truck, being driven by one Clarence Smith, when an accident occurred in which plaintiff was injured. The driver, Smith, and the truck being used at the time were insured by the policy in question to the extent of the coverage of said policy. For the purpose of this case it may be conceded that the injury received by plaintiff was not covered by the terms of the policy but was excluded from the coverage by the provisions above quoted. Plaintiff, Montgomery, filed suit against the driver, Clarence Smith, in the form of an action for tort, seeking damages in the amount of $10,000.00. The Insurance Company was not named as a party to the suit. However, it appeared without dispute that it made an agreement with Smith, the defendant in the suit, which agreement is set out below, whereby it agreed to take charge of the defense of the suit. Pursuant to that agreement it employed its own counsel who took charge of the litigation on behalf of Smith. The trial was had which resulted in a judgment in favor of plaintiff and against Smith for $8,000.00. A motion for new trial was granted and upon a subsequent trial to a jury plaintiff, Montgomery, obtained a judgment against Smith for $3,000.00. The attorneys then wrote to Smith saying: "The Utilities Insurance Company feels that it would not be advisable, from their standpoint, to attempt to appeal or set aside this judgment." The judgment became final. Thereafter plaintiff Montgomery demanded payment of said judgment of the Insurance Company and it refused. Montgomery then filed this suit, pleading the judgment roll of the former suit and the facts relative to the participation of the Insurance Company in that suit, and seeking recovery on the ground that the Insurance Company was in truth and fact a party to the suit of Montgomery v. Smith, and was bound by the judgment therein entered. The Insurance Company, in addition to formal answer, and certain exceptions not necessary to notice, specifically plead that it was not liable under the terms of its policy of insurance, and further denied that it was liable on the principle of estoppel. In that connection it plead:

"That the investigation and defense of the suit of J. T. Montgomery v. Clarence Smith was conducted by the defendant herein not by reason of the obligations contained in the policy but by reason and under and subject to the terms of a separate contract, agreement and understanding executed for valuable consideration between said C. W. Smith and said defendant herein, known and described as a non-waiver agreement * * *, and defendant says that by so conducting the investigation and defense of such case under and by virtue of a separate agreement it has not waived any of its rights or defenses of the policy * * * nor has it recognized its liability in any manner, nor is it estopped to deny its liability to plaintiff, and it is here entitled to assert any and all rights and defenses under the policy provisions."

The non-waiver agreement is too lengthy to be here set out in full and we will quote from it only certain material portions, as follows:

"Whereas, it has come to the attention of the Utilities Insurance Company, operated by Lynton T. Block & Company, and Lynton T. Block & Company, that an accident occurred on or about January 12, 1934, between a truck driven by C. W. Smith and an automobile driven by Waneta Sutherlin, * * * and it is contended that the said C. W. Smith and Joe Byne, foreman of the gang of workmen who was riding in said car, were insured against public liability and property damage while riding in and driving said truck by virtue of a policy of insurance issued by the Utilities Insurance Company to the County Judge of Jefferson County, Texas, * * * and, whereas, J. T. Montgomery, a passenger upon the truck driven by C. W. Smith, has asserted claim for personal injuries arising out of said accident and has filed suit against C. W. Smith and Joe Byne to recover for such alleged injuries; and, whereas, the Utilities Insurance Company and Lynton T. Block & Company have denied and still deny liability for such accident and injuries, if any, to the said J. T. Montgomery, and any and all other passengers on the truck driven by the said C. W. Smith; and whereas, it is the desire of all parties that the Utilities Insurance Company proceed to make such investigation of the claim of said J. T. Montgomery * * * as may be necessary in the opinion of the Utilities Insurance Company, and defend said suit of J. T. Montgomery in court and handle said suit and claim in such manner as in the opinion of the Utilities Insurance Company and Lynton T. Block & Company may be necessary without prejudice to any rights of the said Utilities Insurance Company and/or Lynton T. Block & Company with reference to its denial of liability under said policy and without waiving any provision therein contained * * *

"Now, therefore, in consideration of the sum of One ($1.00) Dollar, cash in hand paid to each, C. W. Smith and Joe Byne, * * * and in further consideration of the mutual understanding and premises herein contained it is agreed * * * (a) That it is the intent of all parties hereto to preserve the respective rights of each party under said policy of insurance above described in status quo as of the date of said accident, to-wit, January 12, 1934, as to the claim of J. T. Montgomery. * * *

"(c) That the Utilities Insurance Company is to investigate said accident and the facts concerning same, and if it so desires to negotiate settlement of claim of J. T. Montgomery arising out of said accident, or if said claim is not settled, then to defend said suit filed by J. T. Montgomery against C. W. Smith and Joe Byne without cost to the assured for attorneys' fees, subject to all agreements, conditions and limitations of said policy of insurance and further subject to the definite and express understanding that the Utilities Insurance Company and/or Lynton T. Block & Company, or either of them, do not assume liability to anyone, whether C. W. Smith, Joe Byne or J. T. Montgomery, and do not waive their right to rely upon each and every provision contained in said policy and do not agree to pay any settlement that may be negotiated or any judgment that may be rendered against the said C. W. Smith and/or Joe Byne, or either of them, nor do the said Utilities Insurance Company and/or Lynton T. Block & Company agree to pay any costs of court nor to procure any bonds or pay any other expense in connection with the handling of said case whatsoever, except fees to the attorneys selected by them to defend said case and the cost of investigation, if any be necessary."

It was further stipulated that the Insurance Company would make such investigation as in its opinion might be necessary, and further would employ counsel to defend the Montgomery suit. Through the attorneys employed by it under the agreement, the Insurance Company took full charge of the defense of the suit of Montgomery v. Smith, and conducted it to final judgment. Smith employed no attorney and appears to have taken no part in the case.

At the conclusion of the evidence in the case at bar both parties moved for an instructed verdict. The motion of the plaintiff was overruled and the motion of the Insurance Company was granted and judgment entered that plaintiff take nothing. This appeal is from that judgment.

## Opinion.

Appellant's contention may be clearly shown by quoting a few excerpts from his brief:

"In the former suit of Montgomery v. Smith the plaintiff clearly had a cause of

action against Smith on account of his negligence in the manner in which he drove the Dodge truck in question. Smith himself, as the defendant in that suit, employed no attorney to represent him and made no defense himself to the suit. In such a situation the plaintiff could have readily recovered the judgment that he sought to recover, and under such conditions he would necessarily have been entitled to retain the judgment that he recovered upon the first trial of the case in the sum of $8,000.00. Who stood in the way, opposing the rights of Montgomery as the plaintiff in that suit? The Utilities Insurance Company, the defendant in the present suit, alone. * * *

"Evidently the insurance company was defending the case from its standpoint, and plainly it recognized its liability under the terms and provisions of the insurance policy that had been paid for by Jefferson County, and it treated Smith as an assured in construing the provisions of its own policy contract. In other words, it is manifest that the insurance company itself assumed that it had a direct interest in the suit and therefore undertook to defend it. Under such conditions, what is the present status of the insurance company with reference to the judgment that Montgomery recovered against Smith? May it be said that it has simply become an officious intermeddler, violating a plain principle of public policy that does not permit one to assume control of a law suit and shape its issues and defenses without being liable and bound by the judgment? Public policy does not permit corporation or individual to make a plaything of the court."

As against that contention appellee makes the counter propositions that only issues actually litigated and determined in the former suit were binding upon the Insurance Company; that the case of Montgomery v. Smith being a common law action for tort not involving an action on the insurance policy the judgment in that case could not preclude appellee's defense here that it was not liable under the terms of its policy. Further, it relies upon the non-waiver agreement which it insists fully preserved to it its every defense under the policy.

■ Passing for the moment consideration of the effect of the non-waiver agreement, we will first consider whether the Insurance Company was liable on the principle contended for by appellant.

We think appellant's contention that the Insurance Company is liable under the general rule prevailing in this state is supported by the authorities. In American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 37 A.L.R. 633, the Indemnity Company was insurer for M. D. Carr, a contractor. Miss Douglas Stough sued Carr for injuries sustained when she fell into an excavation which he had made in the street. Upon the death of Carr, Fellbaum, administrator of his estate, was substituted as defendant. The Indemnity Company conducted the defense of the case. Miss Stough recovered a judgment for $4,000.00 against Fellbaum as administrator. Fellbaum demanded that the Insurance Company pay the judgment, and when it refused he filed suit against it. Our Supreme Court held the Indemnity Company liable. In the course of the opinion Chief Justice Cureton said (page 910):

"It appears to us that the judgment obtained in the suit of Miss Douglas Stough against the administrator may have been binding under the general rule on the indemnity company; in other words, that the indemnity company, in so far as making that judgment conclusive, was a party to that suit. It had a right to make the defense, control the proceedings, examine and cross-examine the witnesses, and though not technically a party, it was so connected with the litigation by its interest in the result and by its active participation that it is bound by the judgment."

In Automobile Underwriters' Ins. Co. v. Murrah, Tex.Civ.App., 40 S.W.2d 233, writ refused, the late Chief Justice Jones, of the Dallas Court of Civil Appeals, thus stated the rule (page 235):

"We therefore conclude that when appellant, with full knowledge of the issues to be tried in the suit against Adair, took exclusive control and management of Adair's defense in such suit, introduced all of the evidence that was before the court on such defense, filed all of the pleadings that were filed for Adair, examined and cross-examined all witnesses, it thereby waived the defensive clauses in the policy of insurance and admitted an unconditional indebtedness of $5,000 in favor of Adair, and became unconditionally indebted to Adair in that amount. All assignments of error in respect to such issues are overruled."

In Ferris v. Southern Underwriters, Tex. Civ.App., 109 S.W.2d 223, writ refused,

Justice Blair of the Austin Court of Civil Appeals quoted with approval from 11 Am. & Eng. Enc. of Law (2d Ed.) page 13, the rule that "where the insurer undertakes the defense of the action by the injured party against the insured, with full information as to the character of the injury, it will be deemed to have waived the point that such injury was not one which would have entitled the insured to recovery." (Page 226.)

The above authorities clearly show the rule applicable to the case before us. Obviously the practical effect of the rule is to require an indemnity insurer to decide whether a cause of action asserted against its insured is within the coverage of the policy before it takes part in the litigation. If the cause of action is not one covered by its policy it has no right in the case. Consequently, if it enters the case and assumes the burden of the defense it thereby concedes its liability and will not thereafter be heard to deny it. As pointed out by Judge Cureton in the Fellbaum Case, there is a contrary line of authorities in some jurisdictions but the cases supporting the Texas rule are "not only grounded on better reasoning than those to the contrary, but * * * are more in accord with common sense and justice".

■ The present suit comes squarely within the rule and appellee is liable unless the "non-waiver" agreement relieved it of the legal effect of its participation in the suit of Montgomery v. Smith. Appellee contends that even though it be conceded that it would be liable under the general rule that nevertheless it is not liable because it specifically preserved its defenses under the policy by reason of its contract with Smith. Its position on that point is clearly shown by the excerpt from its pleading quoted above, wherein it plead "that the investigation and *defense of the suit* of J. T. Montgomery v. Clarence Smith was conducted *by the defendant* herein not by reason of the obligations contained in the policy but *by reason and under and subject to the terms of a separare contract."* (Italics ours.) The "non-waiver" agreement could not have had the effect contended for. That agreement, by its terms and by the construction placed upon it by the insurance company itself in its pleadings in the present suit, was a contract to practice law. It was therefore in violation of the penal statutes of this state which make it

unlawful "for any corporation or any person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law." Act 43rd Leg., p. 835, Ch. 238, Vernon's Ann.Penal Code, Art. 430a. Being in contravention of the statute the agreement was illegal and of no effect.

■ Irrespective of our penal statutes the agreement was void. The insurance company could go into the Montgomery-Smith suit only by virtue of an interest in that suit, conferred upon it by the policy of insurance. It had no·right, and as a matter of law could acquire none, by contract with Smith or anyone else, to conduct that litigation as the representative of Smith. A corporation cannot practice law, and of course it cannot legally contract to do so. State v. C. S. Dudley & Co., Inc., 340 Mo. 852, 102 S.W.2d 895; State ex rel. v. Retail Credit Men's Ass'n, 163 Tenn. 450, 43 S.W.2d 918; Boykin v. Hopkins, 174 Ga. 511, 162 S.E. 796; In re Co-operative Law Co., 198 N.Y. 479, 92 N.E. 15, 32 L.R.A.,N.S., 55, 139 Am.St. Rep. 839, 19 Ann.Cas. 879; Eley v. Miller, 7 Ind.App. 529, 34 N.E. 836; Richmond Ass'n of Credit Men, Inc., v. Bar Ass'n, 167 Va. 327, 189 S.E. 153; State ex rel. v. Merchants' Credit Service, Inc., 104 Mont. 76, 66 P.2d 337; Seawell v. Carolina Motor Club, 209 N.C. 624, 184 S.E. 540; State ex rel. v. Merchants' Protective Corporation, 105 Wash. 12, 177 P. 694; People ex rel. v. Merchants' Protective Corporation, 189 Cal. 531, 209 P. 363; Bennie v. Triangle Ranch Co., 73 Colo. 586, 216 P. 718; In re Otterness, 181 Minn. 254, 232 N.W. 318, 73 A.L.R. 1319; Black & White Operating Co., Inc., v. Grosbart, 107 N.J.L. 63, 151·A. 630. And since a corporation cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it. That would be an evasion which the law will not tolerate. 2 R.C.L. 946; State v. C. S. Dudley & Co., Inc., 340 Mo. 852, 102 S.W.2d 895. The intervention of a corporation as general employer of the attorney between him and the client is destructive of the necessary and important relation of trust and undivided loyalty which must exist between attorney and client. "Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client." People v. People's Trust Co., 180 App.Div. 494, 167 N.Y.S. 767, 768.

Obviously, if the alleged waiver agreement, pleaded and relied upon by appellee, was illegal and void, as we think it clearly was, then it could neither confer upon the insurance company a right to participate in the Montgomery-Smith suit as the representative of Smith nor preserve to it any defense which it otherwise lost by such participation. Courts will not enforce or aid in the enforcement of a contract made for the illegal practice of law. Crawford v. McConnell, 173 Okl. 520, 49 P.2d 551; Hightower v. Detroit Edison Co., 262 Mich. 1, 247 N.W. 97, 86 A.L.R. 509; Meunier v. Bernich, La.App., 170 So. 567; Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356.

As we have said, the non-waiver agreement herein involved was clearly a contract to practice law, and void. By the terms of it the insurance company was not required even to employ attorneys unless court action became necessary. Prior to that it could by an officer or some claim adjuster, unskilled in the law and unlicensed to practice, "negotiate settlement of the claim of J. T. Montgomery", and after suit it had the right of complete control of the litigation. The evils inherent in such practice by unauthorized persons, whether individuals or corporations, are serious and obvious. The many decisions of the courts· of other jurisdictions condemning that sort of thing—and we have cited but a small part of them—serve to show how widespread such practice has become in recent years. They also show that courts everywhere have uniformly condemned it in no uncertain terms. This matter is one which concerns not merely members of the bar only but the public also. The practice of the law is affected with a vital public interest. Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285; Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; Rhode Island Bar Ass'n v. Automobile Service Ass'n, 55 R. I. 122, 179 A. 139, 100 A.L.R. 226. In the latter case, the Supreme Court of Rhode Island said (page 143):

"Assuring protection to duly licensed attorneys and counselors against invasions of their franchise by unauthorized persons is only incidental or secondary to this primary purpose. Great and irreparable injury can come to the people, and the proper administration of justice can be prevented, by the unwarranted intrusion of unauthorized and unskilled persons into the practice of the law."

In the case before us, and going beyond the mere form and looking to the substance, it appears obvious that what the insurance company really tried to do was to defend the Montgomery-Smith suit in its own interest but in the name of Smith, and by means of the agreement with Smith exempt itself from the liability which the law attaches to such participation. This it could not do. The judgment of the trial court is reversed and here rendered for appellant.

Reversed and rendered.