STEWART ABSTRACT CO. et al. v. JUDICIAL COMMISSION OF JEFFERSON COUNTY et al.

No. 3509.

Court of Civil Appeals of Texas. Beaumont.

July 13, 1939.

Rehearing Denied July 20, 1939.

H. C. Keen, Gilbert T. Adams, Geo. A. Weller, W. T. McNeill, W. O. Bowers, John L. Bell, A. M. Huffman, Chas. J. Heidrick, and W. M. Crook, all of Beaumont, and B. T. McWhorter, Jr., of Pt. Arthur, for appellees.

COMBS, Justice.

This appeal is from an order overruling a plea of privilege filed by appellants, seeking to have the venue of the case transferred to Galveston County, where the Stewart Abstract Company, a corporation, has its principal office. The other appellant, Stewart Title Guaranty Company, is also a corporation and has its office and place of business in El Paso. Both appellants maintain an office and place of business in Beaumont, Jefferson County, Texas. In fact they appear to be operated under the same management, the same person being manager of both.

The only question presented by this appeal is the contention of appellants that appellees, on the hearing of the plea, did not establish prima facie a cause of action. The suit was filed in the 60th District Court of Jefferson County by Gilbert T. Adams, W. T. McNeill, A. M. Huffman, W. M. Crook, W. O. Bowers, H. C. Keen, Geo. A. Weller, John L. Bell, Charles Heidrick and B. T. McWhorter, Jr., individually and as members of a group of the Jefferson County Bar, designated as "Judicial Commission of Jefferson County, Texas." The petition charged the defendants, Stewart Title Guaranty Company and Stewart Abstract Company, with the illegal practice of law and sought an injunction enjoining them, their officers and agents, and employees, from engaging in the practice of law and from doing any of several specified acts alleged to have been done in the past by the defendants. The specific acts charged against the defendants were:

"(a) That the Respondents, or each of them, furnish opinions as to the condition of titles to real estate with or without insuring such titles.

"(b) That they and each of them engage in drawing deeds, mortgages, releases, leases, affidavits, contracts, promissory notes and other legal papers for others for pay.

"(c) That they each advise others on legal matters.

Stewart & DeLange, of Houston, for appellant.

"(d) That they each prepare escrow agreements and instructions for others.

"(e) That they and each of them maintain a legal department for the benefit of others.

"(f) That they each furnish legal services and legal advice to others.

"(g) That they each hold themselves out to perform legal services which require use of legal knowledge or skill.

"(h) That they each advertise for legal business.

"(i) That they each openly solicit legal employment and business."

We shall state only briefly the evidence offered by plaintiffs on the hearing of the plea. It was shown that in connection with FHA loans, a number of which seem to have been handled by defendants, it has been the custom of the defendants to prepare, or fill out on forms furnished them, the mortgages or mechanic's liens, notes, the transfer thereof, etc., the charges made therefor being included in the fee charged for insuring the title. It was also shown that a title opinion was prepared in connection with each such guarantee of title. It was testified by Miss N. G. Robinson, the local manager of the defendant companies, and who is also a licensed practicing attorney, that such opinions are prepared for the benefit of the Stewart Title Guaranty Company. However, as established by the testimony of a witness, Walter R. Wortman, he received from the Stewart Title Guaranty Company an opinion on his title, and the opinion was introduced in evidence. It appears to be a copy of the opinion prepared for use of the Title Company and was signed, "N. G. Robertson, Attorney for Stewart Title Guaranty Co., Beaumont, Texas." There was also introduced in evidence an excerpt taken from page 83 of the directory of the American Title Association, 1938, and the symbols from page 1 of the directory, which show that Stewart Abstract Company, Beaumont, Texas, was listed for, "A", that is abstracts; "TI", that is title insurance, and "E", examinations. There was also introduced in evidence an advertisement appearing in the Beaumont Enterprise, a daily newspaper, on Monday, May 10, 1937, by the Stewart Abstract Company, reading: "Know that it is legally yours. Check the title before you buy or build. Don't run the risk of losing your investment or being involved in lengthy court action. Let our experienced staff check the title before you invest any money."

It was shown by the testimony of a witness, E. L. Stewart, that on July 27, 1937, after the above mentioned advertisement appeared in the Beaumont Enterprise, he applied to the Stewart Title Guaranty Company for an opinion as to the title of lots 7 and 8, in block 70, of the North Addition to the City of Beaumont, and that he received an opinion on the title, which opinion was introduced in evidence and reads as follows:

"'P–11, ROB'

"Attorney's Opinion Guaranty File No. 0–2136

"Legal Description of Property Under Search: All of Lots Seven (7) and Eight (8) in Block No. Seventy (70), of the North Addition to the City of Beaumont, except a strip 50 feet wide across the East end of said lots, according to the map or plat of said addition of record in the office of the County Clerk of said County and State.

"Title Good In: Neal Richardson, as of July 27, 1937, at 8 A. M. Angelina Richardson, Guardian of Neal Richardson, N.C.M.

"Subject To:

"(1) The unpaid balance on one certain note originally for $800., dated January 28, 1926, executed by Neal Richardson, payable to the order of R.A.Ferrand in monthly installments of $30., each until paid, bearing interest from date until paid at 10% per annum. Said note is secured by Deed of Trust to C. B. Charlton, Trustee for R.A.Ferrand, dated January 28, 1926, and recorded in Vol. 163, page 340, M. & L. Records, Jefferson County, Texas.

"(a) Said lien is not released of record but is barred by limitations.

"(2) Paving Lien Contract in the amount of $392, executed by Neal Richardson & Wife, Angelina Richardson, to Broussard-Warfield Co., certificate No. 311, said contract being dated, December 2, 1930, and recorded in Vol. 266, page 542, M & L Records of Jefferson County, Texas. Said certificate and lien were transferred by Broussard-Warfield Co., to The Broussard Trust on August 22, 1931, of record in Volume 278, page 231, M & L Records, of Jefferson County, Texas.

"(a) Said lien is not released of record.

"(3) Satisfactory inquiry should be made as to homestead rights of present owners in above property, and as to any changes in the legal and marital status of present owners since their acquisition of property.

"(4) Satisfactory investigation should be made by party in interest, as to matters of area, boundary lines, conflicts, compliance with restrictions, location of improvements, adverse possession, and rights of occupants, and those under whom they claim, as to which matters we have made no investigation, and against which we do not guarantee.

"(5) If Improvements recently completed, or under construction or to be erected, satisfactory proof should be furnished of the payment of all claims for labor performed, and materials furnished, in connection therewith, and written acceptance thereof by the owners furnished.

"(6) Tax Certificates should be furnished showing payment of all taxes and statements furnished showing taxes delinquent.
> "Very truly yours,
> "Frank Lander,
> "Frank Lander, Attorney for Stewart Title Guaranty Co., Beaumont, Texas."

There was next introduced in evidence a receipt, reading as follows:

" 'P–12, ROB'

"Receipt Dated 7/27/1937 Stewart Title Guaranty Company to E. L. Stewart

"Beaumont, Texas, 7–27–1937

"E. L. Stewart
In Account with
    Stewart Title Guaranty Company
"Phone 4952          320 Perlstein Building
    "Guaranty No
    "Title Work                    $15.00
    "Paid 7–27–37
    "Stewart Abst.Co., By F.L."

Miss Nellie G. Robertson, manager of the appellant companies, and who is, as above stated, also a practicing attorney, testified that it was not the practice of the companies to give title opinions; that the title opinions were prepared for the use of the Title Guaranty Company only; that when curative work or legal services were rendered to others, she did so in her individual capacity as an attorney and kept as her own whatever fee she received for such services. It was also shown that Frank Lander, the attorney who signed the title opinion set out above, is no longer with the company. Incidentally, that opinion was not given in connection with title insurance, but was simply a title opinion given to Mr. Stewart, who requested it and paid for it.

## Opinion

■ Plaintiff's evidence showed prima facie, at least, that appellants are engaged in the practice of law. The Stewart Title Guaranty Company prepares mechanics liens, notes, transfers and extensions, and procures their execution by the parties, the charge for such services being included in the fee collected for the title insurance. The Stewart Abstract Company plainly advertised a service which includes a title examination so you will "know you own it." And on at least one occasion the Stewart Title Guaranty Company furnished such an opinion through its attorney and collected $15 therefor.

■ This being a preliminary proceeding we shall not discuss the questions of law involved at length. That the above acts committed by appellants constituted the practice of law is too plain to admit of argument. See annotations, 73 A.L.R. at page 1331. The South Carolina Supreme Court in the case of In re Duncan, 83 S.C. 186, 65 S.E. 210, 211, 24 L.R.A.,N.S., 750, 18 Ann.Cas. 657, pointed out that the practice of law is not limited to the conduct of cases in court. Justice Woods said in that case: "It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law."

Among the many opinions of the Courts of other States, which might be cited, the recent cases of People ex rel. Chicago Bar Ass'n v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 111 A.L.R. 1, by the Supreme Court of Illinois, and Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977, and State ex rel. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895, both by the Supreme Court of Missouri will be found especially helpful on the general subject of illegal practice of law.

But the appellants contend that the acts charged as constituting illegal practice, if done by them, were done under authority of the State Board of Insurance Commissioners which supervises their business, and that "the acts done are done pursuant to the rules and regulations of the Com-

mission and the charges are made pursuant to the rules and regulations made by the Commission." The contention is based on certain provisions contained in a purported copy of Amended Schedule of Rates, Rules and Regulations issued by the Board of Insurance Commissioners at Austin, Texas, January, 1938, amending the schedule of fees to be changed by title insurance companies in an amount "to cover the additional expense of the preparation of all necessary current papers incident to said deal." The copy introduced in evidence set out a schedule of charges and contained the following: "The above charges to include the fee for insurance, title examination, preparation of all necessary current papers incident to said deal, inspection fee, escrow charge and closing of deal, but no other service. (Note: By the term 'necessary current papers' is meant all current papers incident to the particular kind of transaction involved except curative instruments.)"

In so far as these provisions may be construed as authorizing title insurance companies to perform acts amounting to the practice of law they can have no validity whatever. It is of course not within the province of the Commission to regulate the practice of law nor to empower a corporation to practice law. And since it is not within the province of the Commission to determine what acts shall constitute the practice of law, and what shall not, we think the presumption may be fairly indulged that the members of the Commission did not have that matter in mind when the schedule was prepared. In any event, such schedules could not legally empower the appellants to perform the acts charged against them which constitute the practice of law. Rhode Island Bar Ass'n v. Automobile Service Ass'n, 55 R. I. 122, 179 A. 139, 100 A.L.R. 226; Meuiner v. Bernich, La.App., 170 So. 567.

The next question then is: Did the trial court have power to enjoin the illegal practice of law. We think unquestionably the courts do have such power. McCloskey v. San Antonio Public Service Co., Tex.Civ.App., 51 S.W.2d 1088, writ refused. Unauthorized practice of law constitutes a contempt of court. People ex rel. Ill. Bar Ass'n v. People's Stock Yards State Bank, 344 Ill. 462, 176 N.E. 901; Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977. Injunction is a proper remedy to prevent unlawful practice of law when asked by attorneys acting for themselves and other affected members of their profession. Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356, Supreme Court of Minnesota. And a corporation may be restrained by injunction from the performance of acts which constitute the practice of law. Dworken v. Apartment House Owners Ass'n, 38 Ohio App. 265, 176 N.E. 577. The practice of law vitally affects the public interest and the courts have power to enjoin unlawful practice, or take such other steps within their constitutional powers as may be necessary to suppress such practice. Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285; Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356. See, also, annotation to latter case in 94 A.L.R. pages 359 et seq.

A corporation has a legal right to employ an attorney or maintain a legal department to handle its own legal business, furnish it opinions, legal counsel or advice for its own benefit in connection with the performance of its lawful duties. We do not mean to hold otherwise. But a corporation may not furnish legal services to others and collect fees or profits therefor, directly or indirectly, and it may be enjoined from doing so. 2 R.C.L. 946; State ex rel. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895.

A bill book showing charges made by appellants' attorney for legal work done by her, the names of the clients, and the nature of the services rendered, was offered by appellees. Also the ledger reflecting payments was offered. These were excluded by the trial court on objection of appellants that they were privileged, being in the nature of transactions and communications between attorney and client. Incidentally, the attorney was also manager of both appellant companies. These records were mere account books and not privileged. They should have been admitted. 40 C.J. p. 413; 70 C.J. 399, 418, 420; Ex parte Lipscomb, 111 Tex. 409, 239 S.W. 1101.

The judgment of the lower court is affirmed.