OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN

Gerald C. Mann
Attorney General

Honorable D. Richard Voges
County Attorney
Wilson County
Floresville, Texas

Dear Sir:

Opinion No. 0-3984
Re: Can an injunction be secured
to restrain a corporation
from soliciting legal work
for itself or for its attor-
neys and from practicing law?

You have asked the opinion of this department on the above and related questions contained in your letter of September 6, 1941, from which we quote:

"On the facts herein stated, and questions asked, will you please give me an opinion:

"'A' Company, a corporation is engaged in the business of printing stationery and selling office supplies, in connection with its printing business, its agents solicit the printing of Bonds and Warrants. A prospective customer is about to issue warrants, and in determining the cost of the printing of such warrants, it is stated by the soliciting agent, that the cost of the printing would be $34.00; and that the legal work could be done in Austin for $30.00; that the prospective customer could get the legal work done in Austin for the sum of $30.00; that this legal work would include all of the legal work, but would not include a Bond Attorney's Opinion. It is not stated who the attorney is, nor is it stated that the prospective customer would have to see the attorney, or that the customer would have to make any arrangements. In other words, the impression is left, that the printing house would furnish all the legal work for the sum of $30.00.

"Does this constitute practicing law?

"Can the Corporation or its soliciting agent be prosecuted under the existing law?

"Can an injunction be secured restraining such corporation from so soliciting legal work, for itself, or for its attorneys, and from practicing such law?"

Your first question is answered in the affirmative by our Opinion No. O-831, written by Robert E. Kepke, Assistant Attorney General, and addressed to Honorable J. P. Bryan, County Attorney of Brazoria County. Since that opinion deals with a fact situation which is very similar to that outlined by you (except for the bond attorney's opinion) we take the liberty of quoting from it at length:

"In your letter you make the following statement:

"'For a certain sum, say one per cent of the amount of the bond issue, the bond broker will enter into a contract with Brazoria County to work out a schedule of the amount and type of bond to be sold for the particular project suggested, and then procure the services of an attorney to prepare the various orders, notices and other instruments required to make up the transcript of the bond proceeding, pay the costs of the election, printing of the bonds and furnish the opinion of a recognized bond attorney. It is conceivable that the various orders to be passed by the court, the notices, etc., which make up the transcript could be prepared by a person not an attorney; however, all proposals that have been made to the Commissioners' Court of this County have been that the brokers will furnish acceptable attorneys to prepare the transcript of the proceedings. As I understand it, perhaps more than half of the costs of proceedings contract will go to pay attorneys' fees.'

"You further state that the parties who contract with the county in the above described manner are not licensed to practice law, but are individuals who are interested in purchasing bonds. You request our opinion

as to whether or not such contracts are illegal as constituting contracts providing for unlawful practice of law by unlicensed persons.

"It being admitted that the persons who enter into the proceedings contracts described in your letter are not licensed to practice law, the first question to be determined is whether or not the undertakings which such persons have contracted to perform on behalf of the county of Brazoria amount to 'practice of law.'

"The 'practice of law,' as generally understood, is the doing or performing of services in a court of justice in any manner depending therein throughout its various stages and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice and, in a larger sense, it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matters may or may not be pending in any court. 7 C. J. S. p. 703.

"The practice of law has also been defined as follows:

"'In litigated matters it involves not only the actual representation of the client in court, but also services rendered in advising a client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge.' 138 Kan. 899, page 907, 28 P. (2d) 765, 769.

"The foregoing definitions or substantially similar ones have been repeatedly approved by the appellate courts of numerous states. Some of the decisions which have approved one of the foregoing definitions of the practice of law or substantially similar ones, are herewith cited:

"In Re: Opinion of the Justices (Mass.) 194 N. E., 313; Rhode Island Bar Association v. Automobile Service Association (Rhode Island) 179 Atl. 139; Eley v. Miller, 34 N. E. 836; Paul v. Stanley (Washington) 12 Pa. (2d) 401; People v. Peoples Stock Yards State Bank (Ill.)

176 N. E. 911; Crawford v. McConnell (Okla.) 49 Pac.
(2d) 551; Childs v. Smeltzer (Penn.) 171 Atl. 883;
Cain v. Merchants Nat'l Bank & Trust Co. of Fargo
(N. Dak.) 268 N. W. 719; Re: Eastern Idaho Trust Co.
(Idaho) 288 Pac. 157; Fitchette v. Taylor (Minn.)
254 N. W. 910.

"In Texas by statute, Article 430a, Penal Code
of Texas, the practice of law is prohibited by any
corporation, person, firm or association of persons
except natural persons who are members of the Bar re-
gularly admitted and licensed to practice law. Sec-
tion 2 of Article 430a provides as follows:

"'For the purpose of this Act, the practice of
law is defined as follows: Whoever (a) In a repre-
sentative capacity appears as an advocate or draws
papers, pleadings, or documents, or performs any act
in connection with proceedings pending or prospective
before a court or a justice of the peace, or a body,
board, committee, commission or officer constituted by
law and having authority to take evidence in or settle
or determine controversies in the exercise of the
judicial power of the State or subdivision thereof; or,
(b) For a consideration, reward or pecuniary benefit,
present or anticipated, direct or indirect, advises or
counsels another as to secular law, or draws a paper,
document or instrument affecting or relating to secu-
lar rights; or, (c) For a consideration, reward, or
pecuniary benefit, present or anticipated, direct or
indirect, does any act in a representative capacity in
behalf of another tending to obtain or secure for such
other the prevention or the redress of a wrong or the
enforcement or establishment of a right; or (d) For a
consideration, direct or indirect, gives an opinion as
to the validity of the title to real or personal prop-
erty, or (e) As a vocation, enforces, secures, settles,
adjusts or compromises defaulted, controverted or dis-
puted accounts, claims or demands between persons with
neither of whom he is in privity or in the relation of
employer and employee in the ordinary sense; is prac-
ticing law. . . .'

"We believe it requires no extended argument to
establish that the preparation of orders, notices and

other instruments which are necessary to give validity to an election to authorize the issuance of bonds are matters which require legal skill and learing on the part of the person undertaking to prepare such instruments. The various constitutional and statutory provisions with respect to the proceedings necessary to a valid issuance of bonds must be strictly complied with, and it is a matter of common knowledge in the legal profession that the field of bond law is a specialized and technical one which requires experience and study by a trained mind as a prerequisite to the practice of such branch of the law. It seems plain to us that a person who undertakes to supervise all of the necessary steps leading up to a bond election and the issuance of bonds thereunder, including the preparation of necessary orders, notices and other instruments and the furnishing of a legal opinion upon the validity of a bond issue is unmistakably undertaking to practice law.

" * * *.

"We reach this result whether we accept as the controlling definition of the practice of law that definition set forth in Section 2 of Article 430a, Texas Penal Code, or, independently of the statute, the definitions which have been announced and approved by various appellate courts throughout the United States. We believe that no serious contention can be made to the effect that subdivisions (b) and (c) of Section 2 of Article 430a, Penal Code of Texas, are not violated by the undertakings contained in the contracts described in your letter insofar as such contracts provide for the drawing of orders, notices and other legal instruments and the furnishing of legal opinions upon the validity of the bond issue.

"The most recent discussion by a Texas Appellate Court of a question analogous to the one presented in your opinion request is found in Montgomery v. Utilities Insurance Co., 117 S. W. (2d) 486, by the Beaumont Court of Civil Appeals. This case is now pending for decision in the Supreme Court of Texas. In the Montgomery case, an insurance company having issued a liability policy in which it agreed to investigate all accidents and claims covered by the policy and to defend its assured free of cost in any action brought to recover a loss covered by the policy, subsequently

entered into an independent agreement with the assured whereby the insurance company agreed to defend any suit brought against its assured as a result of a certain collision. Such independent agreement was termed a 'non-waiver' agreement, and it further provided that the insurance company should negotiate a settlement of the claim against its assured, and failing in such endeavor, that the insurance company would select and employ lawyers of its own choice to defend the case. However, the insurance company did not agree or bind itself to pay any judgment or court costs resulting from said suit. Attorneys selected and employed by the insurance company subsequently defended a suit brought against the assured, and in such suit judgment was rendered against the assured. The owner of such judgment then instituted suit thereon against the insurance company. In holding that the non-waiver agreement was illegal and invalid, the Court said:

"'That agreement, by its terms and by the construction placed upon it by the insurance company itself in its pleadings in the present suit, was a contract to practice law. It was therefore in violation of the penal statutes of this state which make it unlawful "for any corporation or person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law. Acts 43rd Leg. p. 835, Ch. 238, Vernon's Ann. Penal Code, Art. 430a. Being in contravention of the statute the agreement was illegal and of no effect."

"' * * *. A corporation cannot practice law, and of course it cannot legally contract to do so. State v. C. S. Dudley & Co. Inc. 340 Mo. 852, 102 S. W. (2d) 895; State ex rel. v. Retail Credit Men's Ass'n, 163 Tenn. 450, 43 S. W. (2d) 918; Boykin v. Hopkins, 174 Ga. 511, 162 S. E. 796; In re Co-operative Law Co., 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. N. S. 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879; Eley v. Miller, 7 Ind. App. 529, 34 N. E. 836; Richmond Assn. of Credit Men, Inc. v. Bar Assn. 167 Va. 327, 189 S. E. 153; State ex rel v. Merchants' Protective Corporation, 189 Cal. 531, 209 P. 363; Bennie v. Triagle Ranch Co. 73 Colo. 586, 216 P. 718; In re Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319; Black & White Operating Co. Inc. v. Grosbart, 107 N. J. L. 63, 151 A. 630.'

"'* * *. And since a corporation cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it. That would be an evasion which the law would not tolerate. 2 R.C.L. 946; State v. C. S. Dudley & Co. Inc. 340 Mo. 852, 102 S. W. (2d) 895. The intervention of a corporation as general employer of the attorney between him and the client is destructive of the necessary and important relation of trust and undivided loyalty which must exist between attorney and client. "Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client." People v. Peoples Trust Co., 180 App. Div. 494, 167 N. Y. S. 767, 768.'

" * * *."

"In the recent case of Rhode Island Bar Association v. Automobile Service Association (Rhode Island), 179 Atl. 139, an exhaustive and able discussion and review of the history of the decisions and reasons for prohibiting the practice of law by unlicensed persons is found. In that case an automobile service association, for a stated annual fee, agreed to furnish legal counsel free of charge to represent and defend members of the association in cases involving violations of traffic laws, and also agreed to furnish such counsel for the purpose of prosecuting and defending, on the part of the member, claims and suits for damages for and against the members. The Court after quoting the contract in detail says:

"'Each of the several numbered paragraphs of the respondent's (A.S.A.) contract with its customers calls for legal service of some kind, except paragraphs 3, 6 and 11. True, this legal service is to be rendered not by them personally, but by counsel designated by them. Ostensibly such service is free, but actually it is by far the major part of the consideration which the customer receives for his membership fee. Out of eleven

(Note: In the Montgomery case, quoted from above, the decision of the Court of Civil Appeals has since been reversed by the Supreme Court (138 S. W. (2d) 1062), on the ground that the insurance company was defending the suit to protect its own interest, rather than that of the insured. But we think the authorities cited by the Court of Civil Appeals in that case are applicable to the facts you give.

paragraphs, only three are not of a legal nature, and two of those are so inconsequential as to be disregarded.

"'These respondents then are engaged in selling legal advice and assistance in association with a duly licensed member of the bar of this court. Their association with this member does not absolve them from responsibility. We see no difference in their case from that of the respondent in Re Co-operative Law Co. (1910) 198 N. Y. 479, 92 N. E. 15, 16, 32 L. R. A. (N.S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879, where the court says: "The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client."'

"In another place in the opinion, the Court says:

"'Thus, indirectly through the respondent Morris, they have been assuming to conduct a law practice on a wholesale business scale reaching throughout the state. What these respondents cannot legally do directly they may not do indirectly. They say they have conducted this business for twelve years without interference. This may well be, but mere length of time does not and cannot convert into a legal act what is illegal.'

"In view of the above cited authorities and others too numerous to quote in this opinion, we are constrained to hold that the contracts described in your letter, insofar as such contracts provide for the furnishing of legal opinions on bond issues and for the preparation of orders, notices and other documents of legal nature, contemplate and provide for the practice of law by an unlicensed person and, therefore, such contracts are illegal."

Article 430a of the Penal Code of Texas, cited by you, provides, in part, as follows:

"Art. 430a.    Corporation or association practicing law.

"Section 1.    It shall be unlawful for any corporation or any person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law.

"Section 2.    For the purpose of this Act, the practice of law is defined as follows:  Whoever (a)  In a representative capacity appears as an advocate or draws papers, pleadings, or documents, or performs any act in connection with proceedings pending or prospective before a court or a justice of the peace, or a body, board, committee, commission or officer constituted by law and having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the State or subdivision thereof; or, (b)  For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws a paper, document or instrument affecting or relating to secular rights; * * *.

"  *  *  *  .

"Section 6.    Any person, firm, corporation, or association of persons violating any of the provisions of this Act shall be guilty of a misdemeanor.  If any provision of this Act is violated by any person individually or by any person or persons representing a corporation, or association, or by a corporation, the defendant or defendants upon conviction shall be punished by a fine of not more than Five Hundred ($500.00) Dollars nor less than One Hundred ($100.00) Dollars.

"Section 7.    Any agreement by any person, corporation, or association in violation of this Act shall be illegal * * * ."

We think the opinion of the Beaumont Court of Civil Appeals in the case of Stewart Abstract Co., et al v. Judicial Commission of Jefferson County, et al, also cited by you, is conclusive on the

question of whether an injunction will lie to restrain the illegal practice of law. We quote from that opinion:

"The next question then is: Did the trial court have power to enjoin the illegal practice of law. We think unquestionably the courts do have such power. McCloskey v. San Antonio Public Service Co., Tex. Civ. App., 51 S. W. (2d) 1088, writ refused. Unauthorized practice of law constitutes a contempt of court. People ex rel. Ill. Bar Assn. v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; Clark v. Austin, 340 Mo. 467, 101 S. W. (2d) 977. Injunction is a proper remedy to prevent unlawful practice of law when asked by attorneys acting for themselves and other affected members of their profession. Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356, Supreme Court of Minnesota. And a corporation may be restrained by injunction from the performance of acts which constitute the practice of law. Dworken v. Apartment House Owners Assn., 38 Ohio App. 265, 176 N. E. 577. The practice of law vitally affects the public interest and the courts have power to enjoin unlawful practice, or take such other steps within their constitutional powers as may be necessary to suppress such practice. Randall v. Brigham, 7 Wall. 523, 19 L. Ed. 285; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356. See also, annotation to latter case in 94 A. L. R., pages 359 et seq.

"A corporation has a legal right to employ an attorney or maintain a legal department to handle its own legal business, furnish it opinions, legal counsel or advice for its own benefit in connection with the performance of its lawful duties. We do not mean to hold otherwise. But a corporation may not furnish legal services to others and collect fees or profits therefor, directly or indirectly, and it may be enjoined from doing so. 2 R. C. L. 946; State ex rel. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S. W. (2d) 895."

You state that the "impression is left that the printing house would furnish all the legal work for the sum of $30.00." Assuming that such is the nature of the contract made by the corporation, acting through its soliciting agent, it is our opinion that it is illegal, being in contravention of Section 7 of Article 430a of

Honorable D. Richard Voges, Page 11

the Penal Code; that the responsible officers of the corporation and its soliciting agent may be prosecuted under Section 6 of said article; and that an injunction may be secured to prevent the corporation and its agents from a violation of said article.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

W. R. Allen
Assistant

WRA:RS

Approved: October 16, 1941

$ - Grover Sellers

First Assistant Attorney General

Approved: Opinion Committee

By: B. W. B., Chairman