## DICK WEATHERSTON'S ASSOCIATED MECHANICAL SERVICES, INC. v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY.

100 N. W. (2d) 819.

January 22, 1960—No. 37,730.

*Richard J. Leonard, Eugene M. Warlich,* and *Doherty, Rumble & Butler,* for appellant.

*B. Jerome Loftsgaarden* and *Loftsgaarden & Loftsgaarden,* for respondent.

MURPHY, JUSTICE.

This case comes to us on appeal from an order denying the defendant's motion in the alternative for judgment notwithstanding the verdict or for a new trial. The plaintiff recovered a verdict in the sum of $5,691 in an action brought for breach of contract. The principal issue involved in this case requires a construction of M. S. A. 326.02 as it applies to the particular facts before us. We are asked to determine if a contract which includes professional engineering services is in violation of that statute and illegal so as to preclude recovery thereon under circumstances where the contractor is an unlicensed engineer whose services are rendered subject to the approval and supervision of an architect and engineer retained by the other party.

Viewing the record in the light most favorable to the verdict, the jury could have found these facts: The plaintiff's assignor, Dick Weatherston, at the time of the events involved in this action, was a contractor in the air-conditioning business. He had received a bachelor of science degree in mechanical engineering from the University of Michigan, after which he was employed by various companies, including General Mills and the Seeger Refrigerator Company, as a plant engineer. For some years before engaging in the contracting business in Minnesota he was employed as a project engineer, and in the course of that work he was registered in that profession under the laws of the States of Ohio and Texas. As a contractor he expected to receive work on projects designed and supervised by registered architects and engineers, and he stated in his testimony that in order to avoid a conflict of interest and to obviate the possibility of being considered a competitor with such architects and engineers he did not register as an engineer in Minnesota.

In the fall of 1956 the Minnesota Mutual Life Insurance Company

was in the process of completing the construction of a large home office building in St. Paul. They had retained as their architects the firm of Ellerbe & Company. It appears that during the process of construction of this building the company determined to install certain electronic computing equipment on one of the upper floors of the building. Because of the great amount of heat this machine would give off in operation, there arose a serious problem in providing ventilation and air conditioning in the particular area where the equipment was to be installed.

In the fall of 1956 certain officers of the defendant company discussed the problem with plaintiff. He was advised that the plans submitted by Ellerbe & Company as to this particular phase of the construction and installation would involve costs in excess of the budget set up by the company. They asked him if he would be in a position to give them a proposal, including a design and cost price, to solve the air-conditioning problem in the particular area involved. After being told that Ellerbe & Company were the architects and engineers retained by the builder, Weatherston informed the defendant through its officers that a large part of his business was derived from architectural firms and that if these firms knew that he engaged in designing and engineering work they would discontinue dealing with him. He told them accordingly that he could not compete with Ellerbe in designing the system, but he could submit plans if he obtained the contract for the entire installation. He was told that an arrangement had been made whereby Ellerbe had withdrawn from the "air conditioning phase" of the installation but that they would remain as "consultant" to supervise and approve the system used. Weatherston agreed to this arrangement.

Preliminary plans and specifications were drawn up by Weatherston and submitted to the company with an offer about January 1, 1957. When these plans were submitted to the officers of the defendant company, Weatherston again explained that he was a contractor and did not want to conflict with Ellerbe in doing designing or engineering work. He was told that the company understood his position and that the plans submitted by him would have to be approved by Ellerbe.

After some discussion and examination of his proposals, another plan was drawn up and submitted with a new offer for approval by Ellerbe & Company. Later, modifications were made which were suggested by Ellerbe and a final proposal appears to have been submitted sometime in February 1957. During the course of these negotiations there were at least three conferences with Ellerbe & Company, the defendant's architects. The final plan, except for some minor changes, proved satisfactory to Ellerbe & Company, and after a meeting at their office, it was agreed that the plaintiff would install the necessary equipment and furnish the materials for a price of $16,203. Weatherston testified that, after the final meeting with Ellerbe, the corporate officer who acted for the defendant company told him "to proceed with the work and get the equipment ordered, and then to, just to go ahead and get the job rolling." In the proposals Weatherston submitted, the sales price of all component parts of the air-conditioning system was included. So far as appears from the record no charge for design or plan was made. Weatherston considered the contract as one for the sale of an entire system and none of his actions in submitting the proposals are inconsistent with that conclusion.

On March 2, 1957, about 2 weeks after Weatherston claims his plans were submitted and his offer was accepted, he was informed that the defendant company had determined to give the work to another air-conditioning contractor. No loss was sustained by the plaintiff in the purchase of materials specified for the job. He was able to cancel the orders before delivery. The work was finally performed by Holmsten Refrigeration, Inc. It appears from the evidence that the latter company was not a registered architect or engineer.

■ There is a sharp conflict in the evidence in this case. The evidence of the defendant tended to show that no contract was ever entered into between the parties; that the plaintiff was one of a number of contractors invited to submit a bid or proposal setting forth the materials and labor he would furnish and the price he would charge for the proposed work; and that there was no acceptance of any proposal made by the plaintiff. On the other hand, there was evidence supporting the finding of the jury that an offer and acceptance con-

stituting a valid contract had been made by the parties. Under the circumstances we are controlled by the well-established rule that conflicts are to be resolved upon appeal by stating the controlling facts as the jury, in the light of the whole evidence, reasonably could and must have found them in arriving at its verdict. An appellate court is controlled by this elementary rule even though it might have, on the basis of the record, reached a different conclusion. Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; 1 Dunnell, Dig. (3 ed.) § 415b; 14 Id. §§ 7144, 7159. Whether certain witnesses are worthy of belief is primarily for the jury and the trial court. Becker v. Thomson, 208 Minn. 332, 294 N. W. 214.

■ It is the contention of the defendant that the contract involved is one for professional engineering services and, since the plaintiff was unlicensed as an engineer, the contract is illegal so as to preclude recovery. It may be generally stated that where a license or certificate is required by statute as a requisite for one practicing a particular profession, an agreement of professional character without such license or certificate is ordinarily held illegal and void.[1]

■ It is specifically provided by M. S. A. 326.02 that it is unlawful for a person to practice, among other occupations, architecture and professional engineering unless such person is qualified by registration under law.[2] This statute is founded upon sound public policy, having

---

[1] 53 C. J. S., Licenses, § 59; 33 Am. Jur., Licenses, §§ 68 to 74; 4 Dunnell, Dig. (3 ed.) § 1873.

[2] Section 326.02, subd. 1, provides:

"In order to safeguard life, health, and property, and to promote the public welfare, any person in either public or private capacity practicing, or offering to practice, architecture, professional engineering, or land surveying in this state, either as an individual, a co-partner, or as agent of another, shall be registered as hereinafter provided. It shall be unlawful for any person to practice, or to offer to practice, in this state, architecture, professional engineering, or land surveying, or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.16, or to use in connection with his name, or to otherwise assume, use or advertise any title or description tending to convey the impression that he is an architect, professional engineer (hereinafter called engineer) or land surveyor, unless such person is qualified by registration under sections 326.02 to 326.16."

as its purpose the public health and welfare as well as the protection of the public against incompetence and fraud.[3] It has been held in accordance with this principle that contracts made in violation of statutes requiring registration or licensing of engineers or architects are illegal and unenforceable because inimical to both the public policy and the actual, though implied, intent of the legislature.[4]

■ While it is true that certain elements of the preliminary work performed by the plaintiff, such as calculations and design submitted by the plaintiff to the defendant and its architects, required an expertise in the area of engineering as defined by § 326.02, subd. 3,[5]

[3]In re Estate of Peterson, 230 Minn. 478, 42 N. W. (2d) 59, 18 A. L. R. (2d) 910; Leuthold v. Stickney, 116 Minn. 299, 133 N. W. 856, 39 L.R.A. (N.S.) 231; cf. Vercellini v. U. S. I. Realty Co. 158 Minn 72, 196 N. W. 672; Restatement, Contracts, § 580; 6 Corbin, Contracts, § 1512; 4 Dunnell, Dig. (3 ed.) § 1873; Annotations, 42 A. L. R. 1226 to 1228 and 118 A. L. R. 646.

[4]Baer v. Tippett, 34 Cal. App. (2d) 33, 92 P. (2d) 1028; American Store Equipment & Const. Corp. v. Jack Dempsey's Punch Bowl, Inc. 174 Misc. 436, 21 N. Y. S. (2d) 117, affirmed, 258 App. Div. 794, 16 N. Y. S. (2d) 702, affirmed, 283 N. Y. 601, 28 N. E. (2d) 23; 6 Williston, Contracts (Rev. ed.) § 1766.

[5]Designing the plans and specifications called for knowledge of heating units (called British Thermal Units) which the equipment would give off when operating; calculating the amount of air conditioning needed to carry off the heat and control the room temperature; locating and installing the various component parts of the system; designing methods to comply with city ordinances on water regulation, all for the protection of the machinery and health and comfort of defendant's employees. Section 326.02, subd. 3, provides:

"Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.16 who shall furnish any technical professional service, such as planning, design or supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, works, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical sciences, acquired by education or training."

the transaction as a whole must be considered in connection with its particular facts to determine if it comes within the prohibition of § 326.02. Justice and sound public policy do not always require the literal and arbitrary enforcement of a licensing statute.[6] While recognizing the general rule that a contract executed in violation of a statute imposing a prohibition against the carrying on of a business or occupation without first having secured a license is void, that rule is not to be applied in a particular case without first examining the statute as a whole to determine whether or not the legislature intended such contract to be illegal.[7]

If we apply the terms of the statute to the particular facts in this case we must readily come to the conclusion that the agreement between the parties was in no way inimical to life, health, property, or public welfare; nor should there be any difficulty in conceding that the transaction before us is free from any element of fraud, incompetence, or misrepresentation. Viewing the relationship of the parties, it must be recognized at the outset that the plaintiff was sought out by the defendant for his services as an air-conditioning contractor. It was clearly understood by the defendant that the plaintiff was engaged in the air-conditioning business and that in addition to his qualifications as a contractor he had a background and education giving him a certain competence in the area of engineering. The plaintiff, however, made it clear to the defendant that he was not a registered engineer and architect. It is equally clear that the defendant had its own architects and engineers and did not wholly rely upon the qualifications of the plaintiff in that area. Because of the nature of the work to be performed, it was necessary for the plaintiff in order to give the defendant an estimate of the cost of the proposed work to specify the materials needed with plans and details of how the work was to be carried out. The defendant company was interested in having the work done at a price

---

[6] Corbin, Contracts, § 1512, p. 968.

[7] 4 Dunnell, Dig. (3 ed.) § 1873; see, In re Estate of Peterson, 230 Minn. 478, 42 N. W. (2d) 59, 18 A. L. R. (2d) 910; Minter Brothers Co. v. Hochman, 231 Minn. 156, 42 N. W. (2d) 562; Brimhall v. Van Campen, 8 Minn. 1 (13).

which would come within its budget. Since the plan for this work prepared by its own architects and engineers exceeded the budget, it was not surprising that it consulted a contractor who, because of his business, had specialized knowledge of methods of installing air-conditioning equipment. The design and plan he submitted to accomplish this purpose were approved by the defendant's architects and in effect were adopted by it and became its own plans.[8]

Since the professional work performed by the plaintiff in this case was incidental to and part of a contract for an entire job which was approved and accepted by architects and engineers responsible for the supervision of such construction, it is our view that it comes within those numerous exceptions which hold generally that the prohibitions of the statute involved are no broader than its purpose in protecting the public from misrepresentation and deceit.[9] The scope of the statute coincides with the reasons for its existence. Since those reasons have no bearing upon the transaction involved herein, the statute is without application. 6 Corbin, Contracts, § 1512; In re Estate of Peterson, 230 Minn. 478, 42 N. W. (2d) 59, 18 A. L. R. (2d) 910.

---

[8]The necessity of examining the particular facts in each case so as to determine whether or not there is a violation of the statute becomes apparent from the testimony of Richard Holmsten, who was eventually awarded the contract for the work. He was not registered as an engineer or architect, yet he testified there were two methods by which air-conditioning contractors received work. He said, "One is to receive from a registered engineer a set of plans and specifications whereby he will outline the problem involved and we submit our quotation to accomplish this problem." The other, he said, is to call upon the customer and "ask him for the opportunity to design and work up a proposal to accomplish, for the problem which we quote a sum of money to accomplish this." He further testified that his company prepared plans where the job was of sufficient size "that it is to our benefit." It is conceivable that under the latter method, depending upon the particular circumstances, the contractor might find that he is in fact engaging in professional engineering work without having registered as required by law.

[9]Kennoy v. Graves (Ky.) 300 S. W. (2d) 568; Edmonds v. Fehler & Feinauer Const. Co. (6 Cir.) 252 F. (2d) 639; Dow v. United States (10 Cir.) 154 F. (2d) 707; Fischer v. Landisch, 203 Wis. 254, 234 N. W. 498.

■ In support of its contention that the plaintiff violated the statute, the defendant points to the allegation of the plaintiff's amended complaint claiming damages in the sum of $1,500 for "work performed in designing and preparing drawings for said mechanical work" and to the testimony of the plaintiff to the effect that his contract price included the sum of $1,500 for that particular work. It argues that this evidence alone is determinative of the character of the work as being an architectural and engineering service requiring registration under the law.

In discussing this point it is necessary to keep in mind that this is not a suit to collect for an architectural or engineering fee. It is a suit to recover damages suffered by the plaintiff as a result of the defendant's alleged breach of contract. The only out-of-pocket expense involved in this transaction grew out of loss of the plaintiff's time in conferences with the defendant and its architects and in preparation of plans for the execution of the contract. We think the trial court correctly perceived the issues as appears from his instructions. He told the jury that under the laws of Minnesota "an unregistered person is not permitted to practice professional engineering" and that "plaintiff would not be permitted to recover for the engineering services, that is, the consultation service, the drawing of plans, and the proposals standing alone because plaintiff is not a registered engineer in this state." He told the jury that the plaintiff could not recover for the services performed unless he could show that under the agreement "he was to prepare the plans and drawings or any other proposal and make the complete installation for a price certain and that the same was accepted by the defendant * * *." On the issue of damages he correctly instructed the jury in accordance with the general rule that where the breach consists in repudiating the contract or preventing its performance the party who is ready to perform may recover the profits he would have realized had the contract been performed. 15 Am. Jur., Damages, § 151; 5 Dunnell, Dig. (3 ed.) § 2568a. Further, with reference to expenditures made in preparation to execute the contract, the jury was instructed that recovery may be had for expense incurred in part performance or in preparation for performance, providing, of course, such items of

damage are proven. Swanson v. Andrus, 83 Minn. 505, 86 N. W. 465; Periodical Press Co. v. Sherman-Elliott Co. 143 Minn. 489, 174 N. W. 516; Johnson v. Wright, 175 Minn. 236, 220 N. W. 946; 5 Dunnell, Dig. (3 ed.) § 2568a. In determining plaintiff's damage we think it was proper for the jury to take into consideration actual costs incurred by the plaintiff in connection with this work. We think it satisfactorily appears from the evidence that the $1,500 item represents time consumed by the plaintiff, not only in the preparation of the plans and designs for approval by the defendant's architect but expense involved as well in time expended in conferences and in investigating prices and costs of the components required for the installation of the work. We agree with the trial court that it was proper for the jury to consider the $1,500 item as an out-of-pocket expenditure in establishing the amount of plaintiff's damages.

▪ In addition to the $1,500 representing the work performed in designing and preparing the drawings, the plaintiff claimed the further sum of $4,191.21 for loss of profit in the performance of the work. His total claim was $5,691.21. The jury awarded him $5,691, of which $4,191 appears to have been attributable to profit.

The record strongly supports the company's claim that the verdict is excessive. The plaintiff testified as to the cost of the various components, including two air conditioners, pneumatic controls, humidifiers, electrical wiring, and other items including labor and freight. He testified that his profit was $4,191.21, which was the difference between his cost price of $12,011.79 and his selling cost of $16,203. It appears from the record, however, that the plaintiff's estimated cost was $13,011.80, not $12,011.79. His profit, accordingly, would not be $4,191.21, but $3,191.20, or exactly $1,000.01 less than the error in addition showed it to be.

The defendant accordingly argues that a new trial should be granted on the ground that the verdict on the issue of damages is contrary to law and is not sustained by the evidence.

It must be noted, however, that the defendant made no motion in the trial court for a correction of this error. The trial court should have first been given the opportunity to examine the verdict and the

record to determine how the error was made, if there was one, for the error could have been made in other ways than excessive computation by the jury. LaNasa v. Pierre, 225 Minn. 189, 30 N. W. (2d) 32; Fletcher v. German-American Ins. Co. 79 Minn. 337, 343, 82 N. W. 647, 649; Barnard-Curtiss Co. v. Minneapolis Dredging Co. 200 Minn. 327, 274 N. W. 229.

In view of the substantial amount involved, we are of the view that in the interests of justice this particular issue should be remanded to the district court to give it an opportunity to pass upon the matter of the apparent error. The order of the trial court is affirmed and the case is remanded to the district court for the purpose only of reviewing the issue relating to the asserted error in computation. The case is remanded, however, only on condition that the appellant pay the full costs and disbursements on this appeal and such further costs as may be incurred on remand to the district court.

Affirmed with directions.