SCOTT-DANIELS PROPERTIES, INC. v. JAMES R. DRESSER AND ANOTHER.

160 N. W. (2d) 675.

August 9, 1968—No. 40,948.

180

*John E. Daubney,* for appellant.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty, John C. McNulty,* and *Harvey F. Kaplan,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

MURPHY, JUSTICE.

This is an appeal from an order of the Ramsey County District Court denying plaintiff's motion for a new trial in an action brought to remove a mechanics lien and to recover damages for breach of contract. Defendants counterclaimed for damages and sought foreclosure of their mechanics lien. The work involved architectural services in the remodeling of a motel and the construction of a restaurant facility. The plaintiff, Scott-Daniels Properties, Inc., contends that, because the individual defendant, James R. Dresser, failed to qualify as an architect by registration pursuant to Minn. St. 326.14, the contract for architectural services is illegal. The trial court found that the individual defendant acted as agent for James R. Dresser & Associates, Inc., the defendant corporation, and that the defendant corporation was entitled to full recovery for the lien claimed.

It appears from the record that James R. Dresser is the president and a principal stockholder of James R. Dresser & Associates, Inc. The corporation engages in the business or profession of architecture, which involves the design of buildings, the preparation of drawings and specifications, and the supervision of construction. Plaintiff is engaged in the operation of a motel. Its president and only shareholder is one Lewis H. Johnson, a businessman with a background of experience in the operation of hotels and a family supermarket. He organized Scott-Daniels in

1960 and purchased the Paul Bunyan Motel, which consisted of 45 or 50 rental units and a swimming pool.

Planning to remodel and expand this facility, Johnson contacted one designer who submitted proposals which were not entirely satisfactory. In about January 1962, in the course of his investigations he learned of James R. Dresser, whose building designs were the subject of articles written in various publications of national circulation. Johnson learned from one Elliot Hoffman, who had used the services of Dresser in connection with a restaurant and a motel in St. Louis Park, that Dresser's services were satisfactory. In referring to Dresser, Hoffman stated: "You know, he's a protege of Frank Lloyd Wright and he's terrific. We're very happy with him, and the plans he did for us have come in about what we thought they would." Although Dresser did not have a college degree in architecture nor was he a registered architect, it appears that he was indeed a student or apprentice of Frank Lloyd Wright and worked for or studied with him for a period of at least 18 months. In addition, he had taken correspondence courses from the University of Oregon. After Johnson contacted Dresser, several conferences followed. At their second meeting they reached an oral agreement in which an approximate budget of $250,000 was suggested for the proposed improvement and it was agreed that the architect's fee would be 10 percent of this amount. Johnson knew that the fee was in excess of standard charges for this kind of work. When it subsequently became certain that the construction costs would exceed $250,000, the fee was fixed by mutual agreement at $25,000. The fee included the preparation of plans, as well as supervision charges.

It appears conclusively from the record that during the time the contractual relations existed between the parties, James R. Dresser & Associates, Inc., was a corporation and that it employed a registered architect, one Arthur Peabody. The construction started sometime in late May or early June 1962 and continued until August, at which time Johnson halted construction because of the excessive costs. About March 20, 1962, after the work on the plans was in progress, Dresser sent to Johnson a form of contract ordinarily used by architects, which purportedly expressed their agreement in writing. Johnson refused to sign, saying that his agreement was with Dresser personally and not with the corporation.

The work continued under the oral agreement until the final termination of their relations in September or October 1962. Johnson paid Dresser $8,000 in installments made March 27, June 12, and August 1, 1962. It is not contended by plaintiff that the disparity between the original budget of $250,000 and the projected cost of $434,000, which became apparent in August 1962, was the result of any incompetence or error on the part of the architect. While the plans were revised from time to time, the scope of the improvement expanded with the approval of plaintiff.

Although fraud is not alleged by plaintiff, it is asserted that Dresser led Johnson to believe that he was, in fact, an architect. Johnson claims that he was given this impression by Dresser, who showed to him scrapbooks and magazine articles relating to his designs which referred to him as an architect. He claims that Dresser informed him that he was registered as an architect in the State of Arizona. It is not disputed that when Johnson called at Dresser's office for their first meeting the identification of his company in the building directory and the legend which appeared on the office door were "James R. Dresser & Associates, Inc." The sketches and plans of the project which were submitted to Johnson and which were received in evidence all showed that they were the work product of "James R. Dresser & Associates, Inc." Johnson admitted receiving copies of these drawings and that he had previously employed as an architect another corporation, Ellerbe & Company. The general contractor and the plumbing contractor were aware from the outset that they were dealing with a corporate architect. Until the termination of the contract, it is not claimed that the work was not progressing satisfactorily.

Pursuant to a pretrial order, the issues for determination were (a) whether the architectural services were contracted by a corporate architect or by an individual architect who had not qualified pursuant to Minn. St. 326.02, and (b) the amount of the damages, assuming there was a valid contract which had been breached by plaintiff.

Minn. St. 326.02, which relates to the requirement of registration for the practice of the profession of architecture, provides in part:

"Subdivision 1. In order to safeguard life, health, and property, and to promote the public welfare, any person in either public or private ca-

pacity practicing, or offering to practice, architecture, professional engineering, or land surveying in this state, either as an individual, a copartner, or as agent of another, shall be registered as hereinafter provided. It shall be unlawful for any person to practice, or to offer to practice, in this state, architecture, professional engineering, or land surveying, or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.16, or to use in connection with his name, or to otherwise assume, use or advertise any title or description tending to convey the impression that he is an architect, professional engineer (hereinafter called engineer) or land surveyor, unless such person is qualified by registration under sections 326.02 to 326.16.

* * * * *

"Subd. 3. Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.16 who shall furnish any technical professional service, such as planning, design or supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, work, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical sciences, acquired by education or training."

The pivotal statutory provision in this case is § 326.14, which authorizes the practice of architecture by corporations and partnerships. It provides:

"A corporation or partnership may engage in work of an architectural or engineering character, or in land surveying in this state, provided the person or persons connected with such corporation or partnership in responsible charge of such work is or are registered as herein required for the practice of architecture, engineering and land surveying."

The pretrial order states:

"It is further admitted that at all times herein material the corporate defendant complied with the provisions of Minnesota Statutes § 326.14."

It is contended by plaintiff that although Dresser had formed the corpo-

ration prior to his meeting with Johnson for the purpose of meeting the registration requirement, "at the most Dresser was acting as an agent for an undisclosed principal." Plaintiff insists that during all of their negotiations he dealt with Dresser individually as an architect whose work had been the subject of magazine articles which had been shown to him; that the progress payments which he made were to Dresser individually; that he refused to sign a contract with the corporation; and that, during their entire relationship, he assumed that he was receiving the services of a qualified architect who had the benefit of training under a noted member of the profession. Plaintiff further argues that his only contract for architectural services was with Dresser, and since Dresser was not a registered architect, the contract is illegal and void. He also argues that the award granted by the court in the sum of $17,000 was excessive on the basis that the contract was not substantially performed.

After hearing the evidence, the trial court found that "the corporate defendant, James R. Dresser & Associates Inc., conducted its operations in compliance with Section 326.14, M. S. A. " The court also found:

"That at all times material herein, Defendant James R. Dresser and Arthur Peabody were agents of the disclosed corporate principal Defendant James R. Dresser & Associates, Inc., and were acting in the course and scope of their respective agencies."

In connection with the project, the court found that the parties originally contemplated a cost of $250,000 but "[t]hereafter, from time to time, by initiation and with express authority of Plaintiff, substantial changes in the initial arrangement were contracted for, including but not necessarily limited to, increase in number of motel units * * *, a change in the heating system * * *, and the size and location of basement and party room structures." With reference to the character of the services performed, the court found that the plans provided to plaintiff "were both structurally and architecturally sound"; that the Dresser corporation effected performance "without unreasonable delay"; that construction was halted by plaintiff because the cost of the project was exceeding estimates; and that, rather than permit the Dresser corporation to continue the project, he "then proceeded to terminate its services; but no defi-

nite termination was effected until on or about October 25, 1962." The court found that prior to the termination of the contract the Dresser corporation "had substantially performed all of its architectural obligations under both phases of the contract,"[1] which would have been seasonably completed had not plaintiff discharged the corporation. The unilateral termination by plaintiff constituted a material breach of contract between the parties. It was specifically found that the Dresser corporation was not guilty of a material breach of the contract and was entitled to recover the sum of $17,000 with interest, expenses, and costs.

As to the status of the individual defendant, James R. Dresser, the trial court stated:

"* * * [T]he evidence revealed that, at no time, did he represent himself to Plaintiff to be registered in Minnesota. In any event, the issue is rendered moot by my findings of corporate agency and statutory compliance."

The trial court further stated:

"* * * I find from all of the testimonial and documentary evidence produced that the parties entered into a valid contract for architectural services and that Plaintiff, at its own peril, decided to, and did, breach the same without substantial cause or justification."

■ We held in Weatherston's Associated Services v. Minnesota Mutual Life Ins. Co. 257 Minn. 184, 100 N. W. (2d) 819, 82 A. L. R. (2d) 1004, that Minn. St. 326.02, which requires persons engaged in the occupation of architecture and professional engineering to qualify by registration, is founded upon sound public policy having as its purpose the public health and welfare, as well as the protection of the public against incompetence and fraud. 4 Dunnell, Dig. (3 ed.) § 1870. Since the purpose of the act is to protect the public by preventing incompetent persons from assuming to act in that particular capacity, a contract of an unlicensed person is invalid. 5 Am. Jur. (2d) Architects, § 4. We discussed the same general subject in the later case of Lew Bonn Co. v. Herman, 271 Minn. 105, 135 N. W. (2d) 222.

---

[1] "Phases" referred to work on the motel and on the restaurant.

■ It would appear to us from a careful examination of the record in this case, which was ably presented by counsel on both sides, that there was evidence from which the trial court might well have found that plaintiff sought the unique personal talents of a designer, assuming that he was a registered architect, and, in the end, found that he was not one but actually did business as an architect under the pretense of being employed by an architectural firm which he had set up ostensibly to conform to the requirements of the law. On the other hand, there was evidence to reasonably sustain findings that the corporation actually did exist during all of the time of their negotiations and dealings; that the corporation employed a qualified registered architect and therefore was permitted to lawfully engage in business under authority of Minn. St. 326.14; and that the individual defendant acted as its corporate agent. We said in Caroga Realty Co. v. Tapper, 274 Minn. 164, 170, 143 N. W. (2d) 215, 220:

"* * * In the trial of cases like this one [a trial before the court without a jury], the trial court has the primary responsibility of determining the fact issues, and in reviewing findings we are and should be guided by the fact that much must necessarily be left to the sound judgment and discretion of that court, which has the advantages, not possessed here, of observing the witnesses, fully hearing their testimony, and thus acquiring a thorough familiarity with all the circumstances of the controversy."

We are constrained to follow the well-established rule that in reviewing findings of fact, not only must the evidence be taken in the light most favorable to the prevailing party, but also that this court will not reverse any finding having evidentiary support notwithstanding the fact that we might have found the facts differently from the trial court.

■ With reference to the claim of plaintiff that the court erred in allowing $17,000, the balance due on the full architectural fee of $25,000, it should be noted that the court found that James R. Dresser & Associates, Inc., had substantially performed the services it undertook to render. While it is true there remained construction work to be performed at the time defendant corporation was discharged, its services with respect to all plans, drawings, and specifications, relating to both phases of the

work, were completed and bids were solicited with respect thereto. It is also clear that the only reason the remaining services, including supervision, were not performed was because of plaintiff's breach of the contract. With respect to damages resulting from a unilateral breach of contract where the damaged party is prevented from performing by the breach, we said in Clark v. Quinn, 203 Minn. 452, 456, 281 N. W. 815, 817:

"* * * [W]hat the law seeks to effect is to allow damages for breach of a contract to the party wronged so as to leave him 'in the same situation with respect to the subject of the contract as its performance would have placed him in.' "

4 Dunnell, Dig. (3 ed.) §§ 1781, 1850.

On the basis of the record, we could not well say that the trial court was in error in holding that the value of the services received by plaintiff was not less than the full amount to which James R. Dresser & Associates, Inc., would have been entitled but for the unilateral breach of the contract by plaintiff.

Affirmed.