ISLES WELLNESS, INC., n/k/a
Minneapolis Wellness, Inc.,
et al., Appellants,

v.

PROGRESSIVE NORTHERN INSURANCE CO., a Delaware corporation doing business in the State of Minnesota, Respondent (A04–485, A04–486, A04–489), Defendant (A04–487, A04–488),

Allstate Indemnity Company, a Delaware corporation doing business in the State of Minnesota, Defendant (A04–485, A04–486, A04–489), Respondent (A04–487, A04–488).

Nos. A04–485 to A04–489.

Court of Appeals of Minnesota.

Dec. 14, 2004.

ment is without merit.

Michael J. Weber, Weber Law Office, Minneapolis, MN, for appellants.

Richard S. Stempel, Eric S. Hayes, Stempel & Associates, P.L.C., Hopkins, MN, for respondents.

Katherine A. McBride, Leatha G. Wolter, Meagher & Geer, P.L.L.P., Minneapolis, MN, for amicus curiae Insurance Federation of Minnesota.

Considered and decided by HUDSON, Presiding Judge; KALITOWSKI, Judge; and KLAPHAKE, Judge.

## OPINION

KALITOWSKI, Judge.

This case is an appeal from a judgment of the Hennepin County District Court, entered pursuant to an order and memorandum granting respondents' motion for partial summary judgment, dismissing appellants' complaints, and dismissing respondents' counterclaims. Appellants— Isles Wellness, Inc. (n/k/a Minneapolis Wellness), A Licensed Physical Therapy, Inc., and Licensed Massage Therapist, Inc.—are clinics in the Twin Cities that provide chiropractic, physical therapy, and massage services. Respondents, Progressive Northern Insurance Company and Allstate Indemnity Company, are providers of automobile insurance in Minnesota. Appellants contend that the district court erred in holding that appellants violated the corporate practice of medicine doctrine.

## FACTS

Jeannette Couf, a layperson not licensed as a healthcare provider, opened the first of the three appellant clinics in the fall of 2000. Couf is the sole shareholder of all three clinics. Appellants are not organized under the Minnesota Professional Firms Act. See Minn.Stat. § 319B (2002). Instead, appellants are organized under the Minnesota Business Corporation Act. See Minn.Stat. § 302A (2002). Appellants provided treatment to various individuals involved in car accidents who had no-fault insurance through respondents. Appellants employed various people, including

licensed chiropractors, to perform these treatments. Respondents initially covered these treatments, but then stopped paying appellants in the spring of 2002.

Forty-nine of appellants' clients assigned their claims to appellants. Appellants then brought five suits against respondents alleging breach of contract and a violation of the Minnesota Fair Claims Practices Act. The parties agreed that these 5 cases would represent and resolve all 49 claims. Respondents brought a counterclaim in each case alleging violations of the corporate practice of medicine doctrine and the Minnesota Professional Firms Act. Respondents also claimed that appellants misrepresented material facts, and that respondents were required by law to investigate the claims.

Appellants brought a motion for partial summary judgment based on the following grounds: (1) respondents did not contest appellants' medical claims on the merits and were in violation of the Minnesota No–Fault Automobile Insurance Act; (2) respondents should not now be allowed to contest appellants' claims because respondents failed to comply with statutory procedures and deadlines for processing claims; and (3) respondents lacked credible supporting evidence for the supposed grounds upon which respondents were relying to deny appellants' claims, and the grounds were not legally valid reasons for denying payment.

Respondents also brought a motion for partial summary judgment arguing that, because appellants violated the corporate practice of medicine doctrine and the Minnesota Professional Firms Act, appellants' contracts for payment of claims were void. Respondents further argued that the contracts were voidable on public policy grounds. Respondents allege that Couf was running a "patient mill" by aggressively recruiting accident victims for the appellant clinics and dictating the frequency and course of treatment. Respondents claim that Couf coerced patients and sometimes paid them to receive treatment, insisted on approving all bills to ensure that the chiropractors followed her directions, and billed the maximum amount. Respondents allege that Couf terminated or asked chiropractors to resign if they did not follow Couf's treatment regime.

The district court filed an order holding that, because appellants practiced healing in violation of the corporate practice of medicine doctrine, all appellants' claims were dismissed. The district court did not reach any other issues, including appellants' arguments regarding the Minnesota No–Fault Automobile Insurance Act, the Minnesota Fair Claims Practices Act, or whether respondents had evidence that any of the treatments were not reasonable or necessary. Nor did the district court reach respondents' argument that, apart from the corporate practice of medicine doctrine, appellants violated public policy in the organization and operation of their clinics. Because the district court did not reach these issues, we limit our review to the district court's application of the corporate practice of medicine doctrine.

## ISSUE

Did the district court err in deciding that appellants violated the corporate practice of medicine doctrine?

## ANALYSIS

On an appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court must examine the evidence in the light most favorable to the party against whom judg-

ment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Appellants argue that Minnesota law allows regular business corporations to provide chiropractic, physical therapy, and massage therapy, as long as duly licensed professionals are responsible for directly and independently providing the health-care services. More specifically, appellants reject the premise that their clinics were organized in violation of the so-called corporate practice of medicine doctrine. Appellants argue that, in Minnesota, the corporate practice of medicine doctrine extends, if at all, to only a handful of health-care professionals as identified by either statute or common law. Appellants state that, because no Minnesota statute or case prohibits appellants from hiring chiropractors, physical therapists, or massage therapists, appellants did not violate the corporate practice of medicine doctrine.

The district court, relying solely on *Granger v. Adson,* 190 Minn. 23, 250 N.W. 722 (1933), determined that appellants were "practicing healing" in violation of the corporate practice of medicine doctrine. The district court examined *Granger* and concluded that its holding prohibits the practice of medicine or healing by a corporation. The district court explained that, although the *Granger* court did not identify its holding as the adoption of the corporate practice of medicine doctrine, it would use the term because "both parties use it, it is convenient, and it has been used by reporters to Minnesota statutes." *See* Minn.Stat. Ann. § 319B.01 reporter's notes (West 2004) (stating that, until the enactment of the statutes comprising the Minnesota Professional Firms Act under chapter 319, "the corporate practice of medicine doctrine prevented a for-profit corporation from furnishing medical services and thereby prevented doctors from organizing a practice as a corporation.")

(citing *Granger,* 190 Minn. at 26–27, 250 N.W. at 723).

Our application of *Granger* to these facts leads us to conclude that it is both distinguishable on its facts and limited in its holding. Thus, even if we assume that the *Granger* court adopted the corporate practice of medicine doctrine, we conclude the district court erred in holding that *Granger* bars the corporate employment of chiropractic, physical therapy, or massage therapy practitioners.

*Granger* involved a layman (non-doctor), Mr. Granger, who conducted "health audits" for subscribers to his service for a fee. *Granger,* 190 Minn. at 24, 250 N.W. at 722. These health audits consisted of blood pressure tests and urine samples from subscribers that Granger would send to a licensed pathologist for analysis. *Id.* The pathologist would report the results of his analysis to Granger, who would then present the results to the subscriber and offer advice regarding diet, habits, and exercise, or refer the subscriber to a physician. *Id.*

The supreme court determined that in acting as he did, Granger was personally practicing medicine in violation of Minnesota law. *Id.* at 25, 250 N.W. at 723 (citing 1927 Minnesota statute providing that it is a gross misdemeanor to practice medicine in Minnesota without a license). The supreme court also concluded that Granger was practicing healing in violation of Minnesota law. *Id.* at 27, 250 N.W. at 723–24 (citing 1927 Minnesota statute defining the practice of healing to include the diagnosis or analysis of the condition of human health). The supreme court held that the contract between Granger and the pathologist was illegal, against public policy, and void. *Id.,* 250 N.W. at 724.

Here, the district court specifically determined that the appellant clinics were

not practicing medicine as defined by Minnesota law. *See* Minn.Stat. § 147.081 (2002) (defining the unlawful practice of medicine and stating penalty). Rather, the district court found that appellants engaged in the practice of healing as defined by Minnesota law. But unlike the *Granger* court, the district court did not find that any individuals practiced healing without the proper licensing or certification. *See* Minn.Stat. § 146.01 (2002) (defining the practice of healing). Instead, the district court voided appellants' contracts solely on its application of the corporate practice of medicine doctrine, concluding that "any contract [appellants] have for practicing healing is illegal, against public policy, and void."

To support its conclusion that *Granger* prohibits both the practice of medicine and the practice of healing by a corporation, the district court cited the following language in *Granger:*

> In *In re Disbarment of Otterness,* 181 Minn. 254, 232 N.W. 318, 73 A.L.R. 1319, we said that a corporation or layman could not indirectly practice law by hiring a licensed attorney to practice law for others for the benefit or profit of such hirer. We are just as firmly convinced that it is improper and contrary to statute and public policy for a corporation or layman to practice medicine in the same way.

*Granger,* 190 Minn. at 26–27, 250 N.W. at 723. But even assuming that this language adopts the corporate practice of medicine doctrine in Minnesota, we conclude that *Granger* cannot be read to bar the corporate employment of chiropractic, physical therapists, or massage therapists. *Granger* involved an individual whose actions were found to constitute the practice of medicine. *Id.* at 25, 250 N.W. at 723. Here, the conduct relied on by the district court involves the corporate ownership of a chiropractic clinic. And although the *Granger* court drew an analogy between a corporation indirectly practicing law and indirectly practicing medicine, it did not extend this reasoning to the practice of healing. Thus, we cannot conclude that the corporate ownership of a chiropractic clinic violates the supreme court's holding in *Granger.*

In addition, there are no statutes that support a prohibition against the corporate employment of chiropractic, massage therapy, and physical therapy practitioners. And appellants note that the Minnesota Legislature recently introduced but failed to pass a bill prohibiting the corporate practice of chiropractic. S.F. 3228 (Minn. 2001–02) (proposing that it be unlawful in Minnesota for any firm, other than one organized pursuant to the Minnesota Professional Firms Act, to practice chiropractic). Further, with respect to the practice of healing, the legislature has statutorily prohibited only the corporate practice of dentistry. *See* Minn.Stat. § 150A.11 (2002) (stating that it is unlawful for any person to practice dentistry under the name of a corporation or company). We presume that the legislature would not have found it necessary to bar the corporate practice of dentistry if, because of the holding in *Granger,* there existed a broader prohibition to the corporate practice of healing.

In conclusion, because the district court did not address the merits of appellants' other claims or respondents' counterclaims, including respondents' allegations regarding Couf's involvement in the appellant clinics, we limit our decision to the district court's application of the corporate practice of medicine doctrine. Assuming that, in *Granger,* Minnesota adopted the corporate practice of medicine doctrine, we conclude that it does not prohibit the corporate employment of chiropractic, physi-

cal therapy, or massage therapy practitioners.

## DECISION

Because neither statutes nor caselaw bars the corporate employment of chiropractic, physical therapy, or massage therapy practitioners, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**