ISLES WELLNESS, INC., n/k/a
Minneapolis Wellness, Inc.,
et al., Appellants,

v.

PROGRESSIVE NORTHERN INSUR-
ANCE CO., a Delaware corporation
doing business in the State of Minne-
sota, Respondent,

Allstate Indemnity Company, a Dela-
ware corporation doing business in
the State of Minnesota, Defendant.

Nos. A–04–485, A–04–486, A–04–
487, A–04–488, A–04–489.

Supreme Court of Minnesota.

Dec. 7, 2006.

Michael J. Weber, Weber Law Office, Minneapolis, MN, for Appellants.

Richard S. Stempel, Stempel & Doty, PLC, Hopkins, MN, for Respondent.

OPINION

MEYER, Justice.

This case presents the question whether operating a chiropractic clinic in violation of the corporate practice of medicine doctrine voids all contracts between the client and its patients' insurers as a matter of public policy. On remand from our decision holding that the corporate practice of medicine doctrine applies to chiropractors, the court of appeals ruled that the clinics' outstanding claims for chiropractic services were void as against public policy. We reverse and remand to the district court for resolution of the remaining issues.

Jeanette Couf is the sole shareholder of three clinics, Isles Wellness, Inc., n/k/a Minneapolis Wellness, Inc., MN Licensed Physical Therapists, Inc., n/k/a A Licensed Physical Therapy, Inc., and Licensed Massage Therapists, Inc., n/k/a Twin Cities Licensed Massage Therapy, Inc. (collectively the clinics or Wellness). The clinics were incorporated as general business corporations under the Minnesota Business Corporation Act, Minn.Stat. ch. 302A (2004) and operated from 2000 to 2003. Couf is not a licensed chiropractor; however, the services provided by her clinics were provided by licensed chiropractors.

The clinics provided $300,000 worth of chiropractic, massage, and physical therapy services to 49 patients (collectively referred to as the patients) as part of the patients' economic loss benefits available under the Minnesota No–Fault Insurance Act. Although Progressive Northern Insurance Co. and Allstate Indemnity Co. (collectively the insurers) initially paid for services provided by the clinics, the insurers stopped paying for the clinics' services in 2002. Eventually, each of the 49 patients assigned their claims against the insurers to the clinics.

This litigation began in 2003 when the clinics, after acquiring the claims assigned by their patients, filed five complaints against the insurers alleging breach of contract and unfair claims practices. The insurers counterclaimed alleging, among other things, that the clinics were operating in violation of the corporate practice of medicine doctrine. This case is a consolidation of five cases brought by the clinics for unpaid services. The outcome of this consolidated case will resolve all claims the 49 patients have against the insurers.

The district court granted the insurers' motion for partial summary judgment on the issue of the corporate practice of medicine doctrine. Relying on *Granger v. Adson*, 190 Minn. 23, 250 N.W. 722 (1933), the district court concluded that because the clinics were operating in violation of the corporate practice of medicine doctrine, Wellness's contracts were illegal, against public policy, and void. The district court then concluded that the insurers were not obligated to pay any outstanding bills to Wellness.

On appeal, the court of appeals reversed the district court, concluding that the corporate employment of chiropractors, massage therapists, and physical therapists did not violate the corporate practice of medicine doctrine. *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 689 N.W.2d 561, 565 (Minn.App.2004). We then determined that the corporate practice of medicine doctrine did apply to chiropractors, but not to massage therapists or physical therapists. *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513, 524 (Minn. 2005) (*Isles Wellness I*). We remanded this case to the court of appeals to deter-

mine whether the insurers were required to pay the outstanding amounts billed for chiropractic services provided by Wellness. *Id.*

On remand, the court of appeals determined that outstanding claims for chiropractic services were void as against public policy.[1] *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, No. A04–485, etc., order op. at 2–3 (Minn.Ct.App. Feb. 23, 2006). We granted review to determine whether operating a chiropractic clinic in violation of the corporate practice of medicine doctrine voids all contracts between the plaintiffs and the insurers as a matter of public policy.

■ This case presents a question of law. When the issue presented is purely an issue of law, we review the question de novo. *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 181 (Minn.1989); *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

■ Not every illegal contract must be voided in order to protect public policy. *Hart v. Bell*, 222 Minn. 69, 75, 23 N.W.2d 375, 379 (1946); *see also Dick Weatherston's Assoc. Mech. Servs., Inc. v. Minn. Mut. Life Ins. Co.*, 257 Minn. 184, 191, 100 N.W.2d 819, 824 (1960) ("Justice and sound public policy do not always require the literal and arbitrary enforcement of a licensing statute."); *Hollister v. Ulvi*, 199 Minn. 269, 280, 271 N.W. 493, 498–99 (1937) (recognizing that " 'the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and,

1. In making this determination, the court of appeals misconstrued our statement that we were "affirm[ing] the district court's grant of summary judgment to the extent it relates to the clinic's practice of chiropractic" as affirming the district court's conclusion that the

outstanding claims for chiropractic services are void as against public policy. The court of appeals did not engage in any further analysis of the issue. In the interests of judicial economy, we will consider the question.

like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' ") (quoting *Cole v. Brown–Hurley Hardware Co.*, 139 Iowa 487, 117 N.W. 746, 747 (Iowa 1908)). Rather, we examine each contract to determine whether the illegality has so tainted the transaction that enforcing the contract would be contrary to public policy. *Hart*, 222 Minn. at 75, 23 N.W.2d at 379. As a general rule, "a contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society." *In re Estate of Peterson*, 230 Minn. 478, 483, 42 N.W.2d 59, 63 (1950).

 The question in this case is whether enforcing the contract between the insurers and Wellness would be contrary to public policy. We have recognized several public policy reasons for the corporate practice of medicine doctrine. *Isles Wellness I*, 703 N.W.2d at 517. Among the public policy considerations in applying the corporate practice of medicine doctrine are "concerns raised by the specter of lay control over professional judgment, commercial exploitation of health care practice, and the possibility that a health care practitioner's loyalty to a patient and an employer will be in conflict." *Id.* The *Granger* court emphasized these public policy considerations when it stated, "[w]hat the law intends is that the patient shall be the patient of the licensed physician, not of a corporation or layman. The obligations and duties of the physician demand no less. There is no place for a middleman." *Granger*, 190 Minn. at 27, 250 N.W. at 723; *see In re Otterness*, 181 Minn. 254, 257, 232 N.W. 318, 319 (1930) (stating that "neither a corporation nor a layman not admitted to practice can practice law nor indirectly practice law by hiring a licensed attorney to practice law for others for the benefit or profit of such hirer."). But, in affirming

the underlying public policy reasons for the corporate practice of medicine doctrine in *Isles Wellness I*, we expressed some doubt about the continued viability of the underlying public policy rationale, stating, "[w]e agree with the clinics that some of the policy considerations originally supporting the corporate practice of medicine doctrine need re-examination." 703 N.W.2d at 524.

The insurers contend that the corporate practice of medicine doctrine voids all contracts as a matter of public policy. To support this argument, the insurers maintain that under *Granger* and *Otterness* violating the corporate practice of medicine doctrine per se renders all contracts void as a matter of public policy. The insurers contend that allowing Wellness to receive payment in spite of its violation of the corporate practice of medicine doctrine would render the doctrine ineffectual because it would allow clinics to incorporate in violation of the corporate practice of medicine doctrine, provide services, receive retrospective payment, and improperly re-incorporate to continue the process.

The clinics maintain that fairness prevents the invalidation of their contracts because the clinics provided reasonable and necessary services by licensed chiropractors. Further, they argue that at the time services were rendered it was not clear whether the corporate practice of medicine doctrine existed in Minnesota. The clinics also assert that *Granger* is distinguishable from this case because *Granger* involved an unlicensed individual serving clients, whereas in this case only licensed healthcare professionals actually provided services. Wellness maintains that because it substantially complied with Minnesota law by hiring licensed professionals to provide services, their contracts should not be voided, noting that Minnesota law permits this court to uphold con-

tracts made in violation of the law if fairness permits.

This court's jurisprudence does not support creating a per se rule, which would void all contracts entered into in violation of the corporate practice of medicine doctrine as a matter of public policy. Neither *Granger* nor *Otterness* definitively addresses whether the corporate practice of medicine doctrine voids all contracts entered into as part of the illegal corporate practice by licensed individuals. The *Granger* court voided Granger's contracts as a matter of public policy. 190 Minn. at 27, 250 N.W. at 724. However, the court did so after determining that Granger, an unlicensed individual, was practicing healing in violation of the corporate practice of medicine doctrine and state licensing statutes. *Id.* at 26, 250 N.W. at 723. Looking at the underlying public policy of protecting the public health, the danger of Granger's unlicensed practice justified voiding all of his contracts.

In *Otterness* this court examined the issue of corporate practice of law by a properly licensed attorney. 181 Minn. at 255–56, 232 N.W. at 318–19. Otterness was a licensed attorney who provided legal services to private individuals and shared the attorney fees paid for these services with his employer, a bank. *Id.* at 256, 232 N.W. at 319. The court concluded that this was misconduct on the part of both Otterness and the bank, but it did not address the contractual implications of this misconduct. *Id.* at 257, 232 N.W. at 319. *Otterness* was before the court as an attorney discipline matter only. *Id.* at 258, 232 N.W. at 320. By the time the case reached this court, Otterness was no longer engaged in the corporate practice of law and any improper lawyer-client contracts no longer existed. *Id.* Therefore, this court did not have the opportunity to examine the validity of the illegal contracts.

█ Outside of the corporate practice of medicine doctrine, Minnesota law permits voiding contracts if they are in violation of public policy, but it does not require such an action. *See, e.g., Weatherston's Assoc. Mech. Servs., Inc.,* 257 Minn. at 191, 100 N.W.2d at 824. In *Weatherston's*, the court addressed a breach of contract suit involving services performed by an unlicensed engineer. *Id.* at 189–90, 100 N.W.2d at 823. Although the unlicensed practice of a statutorily licensed profession generally mandated voiding any existing agreements or contracts, this court examined the public policy behind the licensing statute, which was to protect the public health and welfare and protect the public against incompetence and fraud. *Id.* Based on the underlying public policy and examining the contract in the context of the specific facts of the case—that the defendant had sought the plaintiff's services and knew the plaintiff's qualifications and that the plaintiff was not registered as an engineer—this court determined that the public policy for the licensing statute had no bearing on the case and refused to void the contract. *Id.* at 191–92, 100 N.W.2d at 824–25.

Similarly, in *Lew Bonn Co. v. Herman,* we addressed the question of whether the failure to file an electrical plan as required by city ordinance precluded recovery by the contractor. 271 Minn. 105, 105–06, 135 N.W.2d 222, 223 (1965). Although the electrical plans were not filed as required by the ordinance, a city electrical inspector had been on site and had the opportunity to examine the plans. *Id.* at 107, 135 N.W.2d at 224. We recognized that entering a contract in violation of a statute generally voids the contract, but we were also mindful of "principles of justice" and refused to void a contract where there was no indication that the contract was entered into with bad motives or an intent to vio-

late the law. *Id.* at 108–09, 135 N.W.2d at 225–26. Based on the facts, we concluded that the legislature did not intend a slight violation to result in the forfeiture of just debt, noting that the record did not indicate any obvious intent to try to violate the statute. *Id.* at 109, 135 N.W.2d at 226.

In this case, we conclude that categorically voiding the contracts would not serve the public policy reasons underlying the corporate practice of medicine doctrine. Permitting insurance companies to avoid liability under their insurance contracts does little to protect patients from the "specter of lay control over professional judgment." *Isles Wellness I,* 703 N.W.2d at 517. We will not void a contract unless it is established that the corporation's actions show a knowing and intentional failure to abide by state and local law. Such a rule is consistent with public policy jurisprudence that requires the court to determine whether the illegality has so tainted the transaction as to make it void under public policy. Moreover, by recognizing the potential for fraudulent claims and invalidating contracts that are tainted by illegality, this approach fairly balances the protection of insurers from fraudulent medical providers and the prevention of a windfall to an insurer from minor technical violations of the doctrine.

██ Nothing in this case indicates a knowing and intentional violation of the laws of this state. Rather, the record shows an obvious intent to try to comply with Minnesota law. Prior to incorporation, Couf contacted the Minnesota Board of Chiropractic Examiners (MBCE) in order to determine if there was any prohibition against lay ownership of a corporate chiropractic practice. The MBCE indicated the only statute that may affect Couf was the Minnesota Professional Firms Act and advised Couf to consult counsel, which Couf did. Couf's counsel advised her that a corporate practice issue did not exist. Based upon these facts, we cannot conclude that public policy necessitates voiding the contracts entered into by the plaintiffs. Moreover, given the lack of clarity regarding the applicability of the corporate practice of medicine doctrine to chiropractors before this court's decision in *Isles Wellness I,* the interests of justice do not favor declaring the contracts void.[2]

The decision of the court of appeals is reversed and this case is remanded to the district court for resolution of the remaining issues.

Reversed and remanded.

---

2. Indeed, this court was divided in *Isles Wellness I* on the question of whether the doctrine applied to chiropractors, with three justices concluding in dissent that the corporate practice of medicine doctrine was not firmly grounded in Minnesota common law. *Isles Wellness I,* 703 N.W.2d at 524–26 (Hanson, Page, and Meyer, JJ., concurring in part, dissenting in part).